SHROADES, APPELLEE, *v.* RENTAL HOMES, INC., APPELLANT.

(No. 80-1593—Decided November 4, 1981.)

*Mr. Jack D. Kuhlman,* for appellee.
*Mr. George A. Chuparkoff,* for appellant.

CELEBREZZE, C. J.  In this cause, the Court of Appeals held that R. C. 5321.04(A)(2) imposed a duty upon the landlord to keep the stairs in a fit and habitable condition, and that the landlord was subject to liability for personal injuries for failure to repair same after reasonable notice. The case was decided before this court's decision in *Thrash* v. *Hill* (1980), 63 Ohio St. 2d 178 (*Thrash,* hereinafter), became known to the litigants.

R. C. 5321.04(A) reads, in part, as follows:

"A landlord who is a party to a rental agreement shall:
"* * *

"(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition."

This provision is part of the Landlords and Tenants Act of 1974. The General Assembly enacted comprehensive legislation which changed the previous common law relationship of

landlords and tenants under residential rental agreements. The Act imposed a number of obligations upon landlords and provided remedies for tenants. For example, R. C. 5321.04(A) imposes obligations on landlords. It provides that:

"(A) A landlord who is a party to a rental agreement shall:

"(1) Comply with the requirements of all applicable building, housing, health, and safety codes which materially affect health and safety;

"(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;

"(3) Keep all common areas of the premises in a safe and sanitary condition;

"(4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by him;

"(5) When he is a party to any rental agreements that cover four or more dwelling units in the same structure, provide and maintain appropriate receptacles for the removal of ashes, garbage, rubbish, and other waste incidental to the occupancy of the dwelling unit, and arrange for their removal;

"(6) Supply running water, reasonable amounts of hot water and reasonable heat at all times, except where the building that includes the dwelling unit is not required by law to be equipped for that purpose, or the dwelling unit is so constructed that heat or hot water is generated by an installation within the exclusive control of the tenant and supplied by a direct public utility connection;

"(7) Not abuse the right of access conferred by division (B) of section 5321.05 of the Revised Code;

"(8) Except in the case of emergency or if it is impracticable to do so, give the tenant reasonable notice of his intent to enter and enter only at reasonable times. Twenty-four hours is presumed to be a reasonable notice in the absence of evidence to the contrary."

The Act also provides remedies for tenants when landlords fail to fulfill their statutory obligations. For example, R. C. 5321.07 allows the tenant to deposit rent with the clerk of court, apply for a court order directing the landlord to

remedy the condition, and to terminate the rental agreement.[1]

Historically, the tenant was viewed as purchasing an interest in the land, and any interest in the buildings was of minor significance. Prior to the enactment of R. C. Chapter 5321, tenants had difficulty recovering for injuries sustained because of defective rental premises. At common law, a landlord, not in possession and control of the rental property, was not liable for injuries occurring on the premises. *Burdick* v. *Cheadle* (1875), 26 Ohio St. 393; *Shindelbeck* v. *Moon* (1877), 32 Ohio St. 264; *Stackhouse* v. *Close* (1911), 83 Ohio St. 339; *Berkowitz* v. *Winston* (1934), 128 Ohio St. 611; *Ripple* v. *Mahoning Natl. Bank* (1944), 143 Ohio St. 614; *Cooper* v. *Roose* (1949), 151 Ohio St. 316; *Brown* v. *Cleveland Baseball Co.* (1952), 158 Ohio St. 1; *Pitts* v. *Cincinnati Metro. Housing Auth.* (1953), 160 Ohio St. 129. Case law developed a test under which a plaintiff-tenant could not recover unless the landlord had a right of control to the exclusion of any control by the tenant. *Ripple* v. *Mahoning Natl. Bank, supra.* Furthermore, unless the landlord had the requisite control, the courts were unwilling to impose tort liability even when there was a contractual agreement for the landlord to make repairs. *Cooper* v. *Roose, supra.* Similarly, a landlord was found not to be absolutely liable in tort for breach of a duty imposed by a penal, municipal sanitary regulation. *Tair* v. *Rock Investment Co.* (1942), 139 Ohio St. 629.

However, there is some common law support in Ohio for holding the landlord liable for breach of a duty to repair. This court has stated that a lessor could be held liable if special circumstances were proven which established that liability. *Shindelbeck* v. *Moon, supra,* at page 273. Under this proposition, a special circumstance could be a duty imposed by statute. Similarly, a lessor could be held liable for the condition of premises if there were an agreement to repair or a violation of a duty imposed by statute. *Stackhouse* v. *Close, supra.* Thus, breach of a duty imposed by statute has been one exception to the landlord's immunity from tort claims by tenants.

---

[1] The remedies provided in this section are not available to a tenant whose landlord is a party to any rental agreements which cover three or fewer dwelling units and who has given written notice of that fact at the time of initial tenancy. R. C. 5321.07(C).

In most instances, the landlord was immune from tort liability for injuries sustained on the rented premises. However, abrogation of this immunity has been advocated by legal commentators, and the overwhelming majority of states have abolished, either in whole or part, the traditional immunity enjoyed by landlords.[2] The Restatement of Property 2d, Landlord and Tenant, Section 17.6, provides, at page 232, that:

"A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property***by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:

"(1) an implied warranty of habitability; or

"(2) a duty created by statute or administrative regulation."

Also, Prosser on Torts (4 Ed.), Section 63, states, at page 400, that:

"Modern ideas of social policy have given rise to a number of exceptions to these general rules of non-liability of the lessor***. There is increasing recognition of the fact that the tenant who leases defective premises is likely to be impecunious and unable to make the necessary repairs, and that the financial burden is best placed upon the landlord, who receives a benefit from the transaction in the form of rent. This policy is expressed by statutes in a number of states, which require the landlord to put and keep certain types of premises, such as tenement houses, in good condition and repair, and have been held to impose liability in tort upon him for his failure to do so."

In light of the previous common law immunity of landlords, and in recognition of the changed rental conditions and

---

[2] *Mease* v. *Fox* (Iowa 1972), 200 N.W. 2d 791; *Sargent* v. *Ross* (1973), 113 N.H. 388, 308 A. 2d 528; *Putnam* v. *Stout* (1976), 38 N.Y. 2d 607, 381 N.Y. Supp. 2d 848; *Mobil Oil Corp.* v. *Thorn* (1977), 401 Mich. 306, 258 N.W. 2d 30; *Brewer* v. *Erwin* (1979), 287 Ore. 435, 600 P. 2d 398; *Pagelsdorf* v. *Safeco Ins. Co.* (1979), 91 Wis. 2d 734, 284 N.W. 2d 55; *Young* v. *Garwacki* (Mass. 1980), 402 N.E. 2d 1045. See, also, *Steele* v. *Latimer* (1974), 214 Kan. 329, 521 P. 2d 304; *Francis* v. *Pic* (N.D. 1975), 226 N.W. 2d 654; *Teller* v. *McCoy* (W. Va. App. 1979), 253 S.E. 2d 114; *Pugh* v. *Holmes* (1979), 486 Pa. 272, 405 A. 2d 897.

the definite trend to provide tenants with greater rights, the General Assembly enacted R. C. Chapter 5321 in 1974. We agree with the majority in *Thrash, supra,* insofar as the Act was an attempt to balance the competing interests of landlords and tenants.

Therefore, the remedies provided in R. C. Chapter 5321 are cumulative, as stated by the dissent in *Thrash, supra,* at page 183. For example, the remedy of depositing rental payments with the clerk of court is grossly inadequate to compensate tenants for the types of injuries sustained in the present case or in *Thrash.* An alternative remedy of termination of the lease is also not an adequate or viable option for many tenants when there is a lack of availability of other apartments and considering the costs involved in relocating. Thus, the new remedies given tenants in R. C. Chapter 5321 are intended to be preventive and supplemental to other remedial measures.

R. C. Chapter 5321 should be read as an integrated unit. We note that R. C. 5321.12 allows recovery for damages for "the breach of any duty that is imposed by law." It is significant that R. C. 5321.04 clearly imposes a duty to repair on landlords.

In light of the public policy and drastic changes made by the statutory scheme of R. C. Chapter 5321, we hold that a landlord is liable for injuries, sustained on the demised residential premises, which are proximately caused by the landlord's failure to fulfill the duties imposed by R. C. 5321.04. We conclude that the General Assembly intended both to provide tenants with greater rights and to negate the previous tort immunities for landlords.

R. C. 5321.04 imposes duties on the landlord to make repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition. Furthermore, the purpose of the statute is to protect persons using rented residential premises from injuries. A violation of a statute which sets forth specific duties constitutes negligence *per se. Schell* v. *DuBois* (1916), 94 Ohio St. 93; *Patton* v. *Pennsylvania R.R. Co.* (1939), 136 Ohio St. 159; *Grieser* v. *Huntington Natl. Bank* (1964), 176 Ohio St. 291. However, in addition to negligence *per se,* proximate cause for the injuries sustained must be established. *Schell* and *Patton, supra.* Also it must be

shown that the landlord received notice of the defective condition of the rental premises, that the landlord knew of the defect, or that the tenant had made reasonable, but unsuccessful, attempts to notify the landlord.

The majority in *Thrash,* at page 181, found "no express statutory establishment of a cause of action in tort against a landlord who does not satisfy * * * obligations imposed upon him by R. C. 5321.04."[3] *Thrash* did not address the question of negligence *per se.*[4] We conclude that a violation of this statute is negligence *per se.* Consequently, we reverse *Thrash* decided in July 1980. While respecting the doctrine of *stare decisis,* it is more important to recognize the need to effectuate the intent of the General Assembly in enacting R. C. Chapter 5321 and for Ohio to join the overwhelming majority of states which provide much needed rights to tenants.

Applied to the facts in this case, appellee sustained injuries when a step on the outside stairway collapsed. Under R. C. 5321.04(A)(2), the landlord had a duty to "[m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." The landlord received notice of the defect but failed to fulfill these duties and, thus, violated the statute. This violation constitutes negligence *per se.* Whether the tenant's intervening act of using the stairs broke the causal connection between the landlord's negligence *per se* and the injury depends upon whether the intervening act was reasonably foreseeable by the landlord. The jury apparently found that the appellee's injuries were proximately caused by the landlord's negligence. It is reasonable for the jury to have concluded that the chain of causation was not broken because it was foreseeable that the tenant would use the stairs. Therefore, the landlord is liable for the injuries proximately caused by its failure to fulfill the duties imposed by the statute.

From this fact situation, it is not necessary for us to consider the question of control of the stairway. The applicable action applies to the entire leased premises and is not restricted to the common areas.

---

[3] The majority view in *Thrash, supra,* was the subject of an article in 10 Capital University L. Rev. 441 and in 50 University of Cincinnati L. Rev. 134.

[4] But, see, *Thrash, supra,* dissenting opinion.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

SWEENEY, LOCHER and C. BROWN, JJ., concur.

W. BROWN, HOLMES and KRUPANSKY, JJ., dissent.

CLIFFORD F. BROWN, J., concurring. I concur in every respect with the excellent analysis provided by Chief Justice Celebrezze writing for the majority. As stated therein, the remedies afforded the tenant, as well as the landlord, in R. C. Chapter 5321, are in addition to the common law remedies possessed by both landlord and tenant prior to the enactment of R. C. Chapter 5321 in 1974. The majority in *Thrash* v. *Hill* (1980), 63 Ohio St. 2d 178, at page 182, completely ignored the cumulative character of the remedies provided in R. C. Chapter 5321, and *sub silentio,* reached the opposite and wrong conclusion, namely, that the tenant was confined to the remedies provided by R. C. Chapter 5321, and no longer had the common law remedy of an action in tort against his landlord.[5]

On the contrary, the tenant still has a common law remedy by way of an action in tort against his landlord. Following the enactment of R. C. Chapter 5321, an action may be predicated upon the negligence *per se* of the landlord for breach of his statutory duty, under R. C. 5321.04, to make repairs.

The anomalous result reached in *Thrash* v. *Hill, supra,* has no counterpart in any other jurisdiction of the United States, and understandably so. It violates the fundamental concept of equal justice for all. The word "equal" encompasses tenants as well as landlords.

In view of the injustice created by *Thrash,* the lament con-

---

[5] This conclusion is evident from the following excerpted language:

"It is argued that R. C. 5321.12 provides the tenant with a cause of action in tort against his landlord. That section provides:

" 'In any action under Chapter 5321 of the Revised Code, any party may recover damages for the breach of contract or the breach of any duty that is imposed by law.'

"An action in tort alleging negligence of a landlord is not, however, 'any action under Chapter 5321 of the Revised Code,' e.g., tenant actions applying for court orders to repair (R. C. 5321.07[B][2] ); landlord actions for release of escrowed rent (R. C. 5321.09 and R. C. 5321.10). On the contrary, an action in tort is a remedy established by the common law."

cerning the erosion of *stare decisis* should fall on deaf ears. *Stare decisis* is only a maxim of the law, and not a "legal principle." "The maxim is founded upon reason, and it should not be so applied as to banish reason from the law." *Cincinnati* v. *Taft* (1900), 63 Ohio St. 141, at page 161.

Reason *was* banished from the law during the 15-month period following *Thrash,* so far as the common law remedies of the tenant are concerned.[6] Under the proper application of *stare decisis,* the overruling of *Thrash* comes 15 months too late for some tenants. It matters little that such overruling receives help from the "revolving door of change" in "the law of this state," resulting from the absence of a "non-changing pattern of the membership of the court."

*Stare decisis* does not mean that a decision of this court cannot be modified or overruled in the near or distant future "where no additional relevant factors are presented which would alter our prior pronouncement on the subject." *Stare decisis* is better explained by Judge Wanamaker in *Adams Express Co.* v. *Beckwith* (1919), 100 Ohio St. 348, at 352:

"A decided case is worth as much as it weighs in reason and righteousness, and no more. It is not enough to say 'thus saith the court.' It must prove its right to control in any given situation by the degree in which it supports the rights of a party violated and serves the cause of justice as to all parties concerned."

Pronouncements about the sanctity of *stare decisis* should be placed in proper perspective by considering the implications of Judge Wanamaker's statements in *State* v. *Rose* (1914), 89 Ohio St. 383 at pages 388-389, as follows:

"Case law is fast becoming the great bane of the bench and bar.

"Our old-time great thinkers and profound reasoners who conspicuously honored and distinguished our jurisprudence have been succeeded very largely by an industrious, painstaking, far-reaching army of sleuths, of the type of Sherlock Holmes, hunting some precedent in some case, confidently

---

[6] Similarly, *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259, was overruled *sub silentio* in *Saunders* v. *Zoning Department* (1981), 66 Ohio St. 2d 259. See the dissent of Holmes, J., in *Saunders, supra,* at 265, and in the instant case, at 31. Having recognized that *Garcia* is now a dead letter, it cannot be given precedential value.

assured that if the search be long enough and far enough, some apparently parallel case may be found to justify even the most absurd and ridiculous contention."

This court has previously referred to precedents as the "***great storehouse of experience; not always to be followed, but to be looked to as beacon lights in the progress of judicial investigation***." "Infallibility is to be conceded to no human tribunal. A legal principle [precedent], to be well settled, must be founded on *sound reason* and tend to the *purposes of justice.* ***Otherwise, it could never be said that law is the *perfection of reason,* and that it is the *reason* and *justice* of the law which give to it its *vitality*." *Leavitt* v. *Morrow* (1856), 6 Ohio St. 72, 78 (Emphasis *sic*). "Few maxims of the law require more careful discrimination in their application than that which enjoins adherence to the doctrine of decided cases." *Shumaker* v. *Pearson* (1902), 67 Ohio St. 330, 334; See 23 Ohio Jurisprudence 3d 125-128, Courts and Judges, Section 492.

"*Stare decisis*" is only a maxim; it is not a religion. We owe it no blind worship, reverence nor benedictions. It should never interfere with attaining justice, the real and final purpose for which this court and all courts exist.

HOLMES, J., dissenting.  Again we find, within this majority opinion, that the law of this state, as most recently pronounced by this court, moves rapidly through the revolving door of change, further eroding any vestige of *stare decisis* that might remain as a legal principle to be followed by the bench and bar of Ohio. This writer was under the naive impression that this court had addressed, and had determined, the law relating to the duties and rights of a landlord-tenant relationship within R. C. 5321.04 in the case of *Thrash* v. *Hill,* 63 Ohio St. 2d 178, decided July 16, 1980. The majority of this court at that time, in discussing the meaning and import of this new landlord-tenant act, stated, at pages 180-181, in the opinion:

"If a landlord fails to fulfill any of the obligations imposed upon him by R. C. 5321.04, including his obligation to make necessary repairs, the Act provides the affected tenant specific statutory remedies. R. C. 5321.07 provides a pro-

cedure whereby a tenant may give written notice to the landlord specifying the acts, omissions or code violations which constitute failure of the landlord's obligations. If within a reasonable time thereafter the landlord fails to remedy the condition, and if the tenant is current in his rent payments, the tenant may deposit his rent payments with the clerk of court or apply to the court for an order directing the landlord to remedy the condition. The court may order a rent reduction until the landlord's obligations are fulfilled, and may order the rent deposited with the clerk to be used to remedy the condition. The statute also allows the tenant to terminate the rental agreement where the landlord fails to fulfill his obligations. R. C. 5321.07(B)(3). * * *

"In *Laster* v. *Bowman* (1977), 52 Ohio App. 2d 379, at 382, the court noted that the Landlords and Tenants Act '* * * establishes various rights and obligations between landlords and tenants in the state of Ohio, now governs the relationship between such parties with regard to rental agreements on residential premises and supersedes all prior Ohio law concerning the rights and obligations encompassed by the act. The new law also provides the *exclusive* remedies now available to landlords and tenants as to the rights and obligations contained in the Act.' (Emphasis added.)

"Thus, the General Assembly, in 1974, undertook to balance the competing interests of landlords and tenants and enacted a statutory scheme establishing a complex interrelationship of obligations and remedies. We find no express statutory establishment of a cause of action in tort against a landlord who does not satisfy the obligations imposed upon him by R. C. 5321.04." (Footnotes omitted.)

The majority in *Thrash* v. *Hill* also specifically addressed the question raised here concerning whether R. C. 5321.12 provides a tenant with a cause of action in tort against the landlord. Accordingly, the opinion, at page 182, stated:

"It is argued that R. C. 5321.12 provides the tenant with a cause of action in tort against his landlord. That section provides:

" 'In any action under Chapter 5321 of the Revised Code, any party may recover damages for the breach of contract or the breach of any duty that is imposed by law.'

"An action in tort alleging negligence of a landlord is not, however, 'any action under Chapter 5321 of the Revised Code,' *e.g.,* tenant actions applying for court orders to repair (R. C. 5321.07[B][2] ); landlord actions for release of escrowed rent (R. C. 5321.09 and R. C. 5321.10). On the contrary, an action in tort is a remedy established by the common law."

It would appear that 15 months is quite enough for the law of this state as pronounced by the majority of this court to be settled and to be followed by our legal community. As noted by my dissent in *Saunders* v. *Zoning Dept.* (1981), 66 Ohio St. 2d 259, at 265, the validity of *stare decisis* as a controlling principle in settling the law of this state is only valid under the condition of a non-changing pattern of the membership of the court—hardly a satisfactory condition of stability of the law upon which lower courts and practitioners in Ohio may reasonably rely.

Believing in the principle of *stare decisis* where the same matter has recently been fairly debated and considered by this court, and where no additional relevant factors are presented which would alter our prior pronouncement on the subject, I would so adhere to our prior determination in *Thrash* v. *Hill, supra,* and, therefore, would reverse the Court of Appeals herein.

W. BROWN and KRUPANSKY, JJ., concur in the foregoing dissenting opinion.