OPINION
Defendant-appellant Menyhart Plumbing and Heating Supply Co., Inc. appeals from a jury verdict and judgment in the amount of $80,000 in favor of plaintiff-appellee Rhoda Parks for her slip and fall on the sidewalk leading to the porch of residential premises leased from defendant. Liability was based on the Landlord Tenant Act requiring the landlord to make all repairs and do whatever is reasonably necessary to keep the premises in a fit and habitable condition and to keep all common areas of the premises in a safe and sanitary condition. R.C. 5321.04. Defendant contends that there was no evidence that the landlord was aware of the condition which caused the injury and the plaintiff did not prove a violation of the Act. For the reasons hereinafter stated, we find merit to the appeal and reverse and enter judgment for the defendant.
Plaintiff lives in a house she rents from defendant at 6310 Lorain Avenue in Cleveland. Around 11:00 p.m. on July 10, 1997, plaintiff was returning home and was injured as she attempted to step on to her front porch from the adjacent sidewalk on the premises. She attributed her fall to a crack in the sandstone sidewalk which did not exist until the very moment of her accident. (Tr. at 94). Before she fell she said she heard a crunching sound, like she was stepping on eggshells. She therefore surmised that the sidewalk cracked the moment she stepped on it. (Tr. at 76, 94). Plaintiff had lived in the rental property for about six years before her accident and walked over the sidewalk four or five times weekly. Plaintiff never complained to her landlord about cracking or crumbling of the sidewalk (Tr. at 94) nor did her housemate. The only complaint she made about the sidewalk concerned the grass which was growing between the slabs.
Defendant/landlord is a family-owned business located immediately east of the subject rental property. Plaintiff testified that defendant's representatives were always available should problems arise with her house; they made frequent inquiries about the condition of the property; and were responsive to the few complaints she made. (Tr. 95-96). Steve Menyhart, the principal of the defendant business, testified that he made frequent visual inspections of the grounds of the rental property. He described the sidewalk as old, but in fair condition. He also never saw cracks in the sidewalk before plaintiff's accident. (Tr. at 224).
At trial, plaintiff presented the testimony of one William A. Behnke, a retired landscape architect and purported sidewalk expert. Behnke examined the sandstone sidewalk and found it to be in generally serviceable condition. He opined that although the crack which caused the plaintiff's fall was not generally visible, that an old crack adjacent to the area should have alerted the defendant that another fracture could occur. Although he testified to this at trial, at his deposition he testified that he found no significant cracks anywhere on the sidewalk and only "minor kinds of chipping and that kind of thing," and that he found no fractures such as the one that appeared at the accident scene anywhere else on the subject sidewalk. (Tr. at 140-41). He also testified during his deposition that the greatest difference in elevation between any two of the sandstone slabs was 1/4 to 3/8 of an inch, while at trial he stated there was a two inch elevation difference. (Tr. at 143).
Behnke rendered an opinion that a reasonable person should have known that the sidewalk was likely to crack under foot and taken measures to prevent the accident by virtue of the adjacent crack. (Tr. at 129-130). He opined that a reasonable person would have stomped up and down on the sidewalk to test its soundness and made a visual inspection "at quite close quarters." (Tr. at 132). He acknowledged that the supposed defect was latent, invisible and unapparent and that sandstone is commonly, reasonably and legally used to build sidewalks. (Tr. at 136-138). He conceded it would be impossible for a reasonable lay person to have known that a fracture would occur by simply looking at the stone. (Tr. at 142). He found no evidence that water had ever laid on top of the stones (Tr. at 143) and stated that he would not normally expect a reasonable lay person to have the knowledge he does about sandstone walks. (Tr. at 145).
The trial court found no evidence to support plaintiff's common-law negligence claim (Tr. at 251) and rejected plaintiff's claimed evidence of attempts to notify the landlord. (Tr. at 255). Nonetheless, the trial court permitted the negligence perse claim under the Landlord Tenant Act to go to the jury with instructions that:
 Going to the law in this case now. And listen carefully to their statements here. The landlord of residential property has a duty to make all repairs and to do whatever is reasonably necessary to keep the premises in a fit and habitable condition, to keep all common areas in a safe and sanitary condition.
 Failure to act in accordance with their duties is negligence as a matter of law.
 You must also find, if you find for the plaintiff, by a preponderance of the evidence that the landlord knew of the condition of the walkway or should have known in the exercise of reasonable care and caution under the circumstances have learned of the condition of the walkway.
(Tr. at 322).
The jury returned an award in plaintiff's favor and this timely appeal ensued.
We find defendant's Assignments of Error I and VII to be dispositive of the appeal.
 I. THE COURT ERRED BY DENYING DEFENDANT'S MOTION FOR A DIRECTED VERDICT, IN ESSENCE HOLDING THAT A RESIDENTIAL LANDLORD MAY BE FOUND NEGLIGENT PER SE WHEN THERE IS NO EVIDENCE THAT THE LANDLORD RECEIVED NOTICE OF THE ALLEGED DEFECT, KNEW OF THE ALLEGED DEFECT, OR THAT THE TENANT HAD MADE REASONABLE, BUT UNSUCCESSFUL, ATTEMPTS TO NOTIFY THE LANDLORD OF THE ALLEGED DEFECT.
 VII. THE COURT ERRED BY INSTRUCTING THE JURY THAT A RESIDENTIAL LANDLORD HAS A DUTY "TO KEEP ALL COMMON AREAS IN A SAFE AND SANITARY CONDITION" WHEN THE SUBJECT RESIDENCE IS A SINGLE FAMILY DWELLING WITHOUT COMMON AREAS, AND COMMITTED FURTHER ERROR BY REFUSING A REQUESTED JURY INTERROGATORY ON THIS POINT.
The standards to be applied in ruling on a motion for a directed verdict were set forth by this Court in Avondet v.Blanstein (1997), 118 Ohio App.3d 357, 364-65:
 In ruling on a directed verdict motion, Civ.R. 50(A)(4), the court construes the evidence in the light most favorable to the party opposing the motion. Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252, 255; Mitchell v. Cleveland Elec. Illum. Co. (1987), 30 Ohio St.3d 92, 93, 30 OBR 295, 295-296, 507 N.E.2d 352, 353-354. The judge neither weighs the evidence nor determines the witnesses' credibility. Wagner, supra; Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 178-179, 423 N.E.2d 467, 469. If the court finds that reasonable minds could come to but one conclusion and that conclusion is adverse to the party opposing the motion, the court should direct the verdict. Wagner and Mitchell, supra.
The plaintiff's essential claim was that defendant had a statutory duty to maintain the leased premises in a fit and habitable condition and to keep the sidewalk in a safe condition; that it had constructive notice that the sidewalk was defective, but failed to take measures to detect the defect and repair the sidewalk leading to plaintiff's injuries.
Plaintiff relies on R.C. 5321.04 which defines the obligations owed by the landlord to the tenant, in pertinent part, as follows:
 (A) A landlord who is a party to a rental agreement shall do all of the following:
 (1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;
 (2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
 (3) Keep all common areas of the premises in a safe and sanitary condition;
 (4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, suppled or required to be supplied by him;
* * *
The leading case on the application of this statute is Shroadesv. Rental Homes, Inc. (1981), 68 Ohio St.2d 20, 25, which held as follows:
 In light of the public policy and drastic changes made by the statutory scheme of R.C. Chapter 5321, we hold that a landlord is liable for injuries, sustained on the demised residential premises, which are proximately caused by the landlord's failure to fulfill the duties imposed by R.C. § 5321.04.
* * *
 R.C. § 5321.04 imposes duties on the landlord to make repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition. Furthermore, the purpose of the statute is to protect persons using rented residential premises from injuries. A violation of a statute which sets forth specific duties constitutes negligence per se. However, in addition to negligence per se, proximate cause for the injuries sustained must be established. Also it must be shown that the landlord received notice of the defective condition of the rental premises, that the landlord knew of the defect, or that the tenant had made reasonable, but unsuccessful, attempts to notify the landlord. (Citations omitted).
Under the statute, a landlord has a statutory duty to make repairs reasonably necessary to put and keep the premises in a fit and habitable condition, and to keep common areas in a safe and sanitary condition. However, we find from a careful review of the record in this case that the plaintiff proved no violation of the Landlord-Tenant Act and its motions for a directed verdict should have been granted.
In the first place, we find that R.C. 5321.04(A)(3) which provides that a landlord shall "keep all common areas of the premises in a safe and sanitary condition" has no application to the facts of the instant case. Indeed, the very next statute, R.C. 5321.05(A)(1), requires the tenant to "keep that part of the premises that he occupies and uses safe and sanitary." Since this case involved the lease of a single family residential unit, the whole premises (including the sidewalks thereon), were "occupied and used" solely by the tenant. In other words, the sidewalk in question was not within "common areas" which the landlord was obliged to keep safe and sanitary for the benefit of multiple tenants. At oral argument on appeal, appellee's counsel agreed with appellant's counsel that the sidewalk was not within a common area and he was not relying on (A)(3) to succeed on this appeal. The trial court obviously erred by instructing the jury over defendant's objections (Tr. at 260) that the landlord had a duty to keep the common areas in a safe and sanitary condition. There were no common areas. A directed verdict should have been granted on the common-area issue.
The issue then becomes whether the landlord could be charged with a violation of R.C. 5321.04(A)(2) which requires the landlord to "make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." There is no evidence that a defect that did not even appear until the moment of the accident rendered these premises unfit or unhabitable. We also find that the defendant's motions for a directed verdict (Tr. at 175; 241-244) on the issue of fit and habitable (R.C. 5321.04(A)(2)) should have been granted. We find persuasive the discussion in Aldridge v. Englewood Village,Ltd. (July 22, 1987), Montgomery App. No. 10251, unreported, where the court found a threshold riser of one and one quarter inches high did not render the premises unfit or unhabitable where the tenant caught her toe and fell fracturing her arm. The court stated:
 From the evidence presented, no statutory violation proving negligence pe[r] se is evident. Firstly, no safety or housing code provision is alleged to have been violated. Secondly, in order to label this threshold a "defect" within R.C. 5321.04(A), such defect must render the premises unfit and uninhabitable. Fitness and habitability entails such defects as lack of water or heat, faulty wiring, or vermin infestation. Taylor v. Alexander (July 11, 1983), Trumb[u]ll App. No. 3550, unreported. The court found in Taylor that a defective handrail, or even the total absence of one, did not cause the premises to be unfit or uninhabitable. The same reasoning would apply to a threshold allegedly three-quarters of an inch too high. Even if we assume the threshold to have been improperly constructed, there is no "affirmative obligation to improve the rental premises by the addition of safety measures not present when the premises are initially leased." Taylor, supra.
 The meaning and interpretation of the statutory phrase "fit and habitable" will not be liberally construed to include that which does not clearly fall within the import of the statute. LaCourse v. Fleitz (1986), 28 Ohio St.3d 209. Having not shown a defect rendering the premises unfit and uninhabitable, liability may not be predicated under R.C. 5321.04(A)(2).
 We further disagree with appellant's claims that actual notice is not a requisite to liability in these particular facts. The requirement of notice within R.C. 5321.04 was discussed by this court in Harbut v. Pendley (Apr. 10, 1984), Mont. App. No. 8403, unreported. Dealing with facts not materially dissimilar to those at bar, this court stated on page four of its opinion:
 The common law immunity of the landlord is not removed by R.C. 5321.04 unless, as in Shroades, the tenant complies with the notice requirement of the statute. The statute provided the tenant with a remedy to negate the immunity of the landlord. If the tenant fails to correct the defect or to exercise his statutory remedy, the fault lies with the tenant. * * * The landlord under these circumstances has no common law or statutory duty to do that of which he has no knowledge, no possession and no control.
See, also, McDaniels v. Petrosky (Feb. 5, 1998), Franklin App. No. 97 APE 08-1027, unreported and Pesse v. Croxton Realty (Dec. 7, 1992), Stark App. No. CA 8779, unreported, which followAldridge and Taylor in finding that minor defects do not impose landlord liability for unfit or unhabitable premises under R.C.5321.04(A)(2). Aldridge and Taylor were expressly called to the trial court's attention on the motion for directed verdict. (Tr. at 242). We find no evidence to support a violation of that section of the statute in the present case. The motion for a directed verdict should have been granted.
Even if we found that the condition of the sidewalk did make the premises unfit and unhabitable, we find the landlord had no notice of the defect. Notice under R.C. 5321.04 may be constructive and need not specifically express the state of the defect with particularity beyond the scope of a layperson's knowledge of a defective condition. In other words, the landlord must be on notice that the defective condition leading to the injury required attention. "However, general knowledge of the possibility of a defect does not rise to the level of either actual or constructive notice." [Citations omitted]." Burnworthv. Harper (1996), 109 Ohio App.3d 401, 406.
At the close of plaintiff's case-in-chief (Tr. at 174-185), and again at the close of all evidence (Tr. at 241-244), defendant moved the court for a directed verdict arguing that there was no evidence presented that the defendant-landlord received notice of the alleged defect, knew of the alleged defect, or that the tenant had made reasonable, but unsuccessful, attempts to notify the landlord of the alleged defect. Defendant contended that the absence of such evidence was fatal to the plaintiff's allegation of a violation of the Landlord-Tenant Act under the Shroades
decision, supra. We agree.
The trial court agreed with defendant's arguments about the state of the evidence on this point. Plaintiff attempted to argue that her alleged complaints about grass growing between the slabs of the sidewalk and a lack of lighting in the area constituted a "reasonable, but unsuccessful, attempt to notify." The court rejected those arguments properly finding that there was no evidence that would bring this case within the holding of the Supreme Court in Shroades, supra. (Tr. at 181-84; 255).
Nevertheless, the trial court denied defendant's motion for a directed verdict by holding that the defendant-landlord was negligent per se if there was evidence that the landlord "should have known in the exercise of reasonable care and caution under the circumstances have learned of the condition of the walkway." The jury was charged accordingly. (Tr. at 322).
The court based its denial of defendant's motion on the opinion of plaintiff's expert that a reasonable landlord should have been able to anticipate that the sidewalk could crack under plaintiff's foot because of alleged previous damage to the sandstone. (Tr. at 135). The court thus held that this "constructive" notice of a defect that was not visibly apparent was sufficient notice to charge the defendant with a violation of the Landlord-Tenant Act. We cannot agree with that construction of the Act.
Plaintiff and her housemate testified that in the six-plus years they lived in the residence they never complained about crumbling or cracking of the sidewalk stones. (Tr. at 54; 94; 106). Similarly, defendant's representative testified that they had never observed cracking or crumbling on the sidewalk. (Tr. at 30; 194). The record is clear there was no actual knowledge.
Plaintiff's expert acknowledged that the defect was undisputably latent, invisible and unapparent; was detectable, perhaps only by "stomping" on the area that eventually broke on the night of plaintiff's accident and by "getting down and making a visual inspection at quite close quarters." (Tr. at 132-36). Plaintiff's expert conceded that: sandstone is commonly, reasonably and legally used to build sidewalks; it would be difficult or impossible for a reasonable lay person to anticipate the plaintiff's accident; there was no evidence that water had ever laid on top of the stones; and he would not normally expect a reasonable lay person to know that sandstone has a tendency to crack or spall. (Tr. at 138-45).
We find no authority for the kind of "constructive notice" referred to by the trial court as satisfying the requirement of notice under the Landlord-Tenant Act as interpreted in Shroades,supra. In the few Landlord-Tenant Act cases where constructive notice is discussed, the constructive notice takes the form of an attempt by the tenant to make actual notice (i.e., the reasonable attempt to give notice that fails). Indeed, the constructive notice in Shroades falls within that description.
The Landlord-Tenant Act does not require the landlord to do that which is unreasonably difficult or impossible; it does not require the landlord to anticipate and prevent every freak accident on the premises. It is not a strict liability statute. Predicting plaintiff's unfortunate fall over a crack that did not exist before her accident would have been next to difficult, if not impossible. We do not think the Act requires the landlord to go around "stomping" on sidewalks to try to create cracks or inspecting sidewalks with a magnifying glass to detect hidden faults. The Act requires the landlord to do maintenance that is "reasonably necessary" to keep the premises fit and habitable. There was no evidence to suggest that these premises were unfit or unhabitable by reason of an unknown crack. The notion that it was reasonably necessary to replace or repair a sidewalk in apparent serviceable condition described by plaintiff's expert should have been disposed of by the court on directed verdict. There was no statutory violation or any notice here, actual or constructive. The court erred to the clear prejudice of the defendant by failing to grant defendant's motions for a directed verdict.
Defendant's Assignments of Error I and VII are sustained.
Given our disposition of Assignments of Error I and VII, it is not necessary to address the other assignments of error which are moot. App. R. 12(A)(1)(c).
Judgment for plaintiff is reversed; judgment entered for defendant.
It is ordered that appellant recover of appellee its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J., CONCURS.
 DYKE, J., CONCURS IN JUDGMENT ONLY.