Plaintiff-appellant Angela Dawson, individually and on behalf of her minor child, Nikisha Dawson, appeals from the summary judgment granted by the trial court in favor of defendants-appellees (collectively, "Williamsburg"). For the reasons that follow, we reverse, in part, the judgment entered in favor of Williamsburg and remand this cause for further proceedings.
The case arises out of an incident that occurred on property owned by Williamsburg. Angela Dawson and Nikisha Dawson lived in a rental unit on the property. While retrieving a ball from a neighboring unit, Nikisha hit her head against the sliding glass door that separated the back patio from the apartment. The glass in the door was not safety glass but annealed or "plate" glass, which shattered upon impact and broke into shards, causing serious lacerations to Nikisha. Nikisha was eleven years old when the incident occurred.
For herself and on her daughter's behalf, Angela Dawson filed suit against Williamsburg for negligence, nuisance, and violations of the Landlord Tenant Act, alleging that Williamsburg had been negligent in installing and/or maintaining plate glass in the sliding door, and that Williamsburg's conduct had proximately caused serious injury to Nikisha.
Williamsburg moved for summary judgment, which the trial court granted. This court reviews the grant of summary judgment de novo. In ruling on a motion for summary judgment, a court must construe the evidence most favorably to the non-moving party, in this case Dawson.[1] For Williamsburg to prevail on its motion for summary judgment, the record must show that (1) no genuine issue as to any material fact remains to be litigated; (2) Williamsburg is entitled to judgment as a matter of law; and (3) the evidence, when viewed most strongly in favor of Dawson, supports only one conclusion, and that conclusion is adverse to Dawson.[2]
R.C. 5321.04(A) (1) requires a landlord to "[c]omply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety." The failure of a landlord to comply with any of the duties described in R.C. 5321.04(A) (1) renders the landlord liable as a matter of law for injuries proximately caused by the landlord's noncompliance.[3]
In its motion for summary judgment, Williamsburg claimed that no genuine issues of material fact existed as to Dawson's claim that Williamsburg (or its predecessor in interest), by using plate or annealed glass rather than safety or tempered glass, violated applicable building codes at the time the sliding glass door was installed. The applicable regulation at the time the door was originally installed stated the following:
BB-43-37. Glass, design loads, impact.
Glass in prime and storm doors, interior doors, fixed glass panels which may be mistaken for means of egress or ingress, shower doors, and tub enclosures shall be designed to withstand impact loads when such panels are in openings in regularly occupied spaces, the lowest point of the panel is less than 18 inches above the finished floor, the smallest dimension is more than 18 inches and the area of the panel is more than 6 square feet. In other openings glass less in thickness than single strength shall not be used and where the least dimension is more than 24 inches the thickness shall be not less than that of double strength.
The parties agree that the sliding glass door provided ingress and egress between the interior of the unit and the patio, and that the door consisted of plate glass, which is not designed to withstand impact loads. In its motion for summary judgment, Williamsburg argued, and the trial court agreed, that the sliding glass door was not in violation of the cited regulation.
Each party submitted the affidavit of an expert purporting to interpret the regulation. Williamsburg's expert opined that sliding glass doors were not required to be impact-resistant, while Dawson's expert reached the opposite conclusion. Although expert testimony may be useful "to establish breach of a standard created by statute or rule, such testimony is not admissible to interpret statutory terms which create the standard."[4] The interpretation of a building-code regulation, like any other statute, is a question of law,[5] and is reviewable de novo by this court.[6]
Since the term "prime door" is not defined in the code or by case law, we must look to the context in which the term is used in the regulation to determine its meaning. Without evidence that "prime" is a term of art in carpentry or construction, we give the term its ordinary meaning.
According to Webster's Third New International Dictionary of the English Language, Unabridged (1981) 1801, the term "prime" means first in order of time or first in rank, authority, significance or urgency. The building-code regulation, read in toto, anticipates the use of safety glass for a door containing glass when the door is used either to separate one interior room from another or to separate the outside of the structure from the inside, including any fixed or nonmovable panels of glass that could be mistaken for means of egress and ingress.
Our interpretation of the term is bolstered by the inclusion of shower doors and tub enclosures in the requirement for the use of safety glass. The regulation requires the use of safety glass in any door that contains glass of a certain size or dimension. It defies reason to contend that interior doors or storm doors that contain glass must be constructed with safety glass, but that a door that is completely glass is excluded from that requirement.
A later version of the building code specifies that "[g]lass in exterior doors, storm doors, interior doors, sliding doors, fixed panels adjacent to doors, shower doors, and tub enclosures" must be constructed with safety glass. Williamburg argues that the specific inclusion of sliding doors in the later regulation demonstrates that the earlier version of the code did not impose a safety-glass requirement for sliding doors. We reach the opposite conclusion. The later version of the code does not use the term "prime door." We hold that the later version clarifies that the types of doors to be considered "prime doors" include "exterior doors" and "sliding doors."
Therefore, we hold that the trial court erred as a matter of law in determining that the building code in effect at the time the sliding glass door was installed in this case did not require Williamsburg to use safety glass and in granting summary judgment on that ground. However, even if the trial court had not erred in this regard, we would still hold that summary judgment was erroneously granted to Williamsburg.
Even if Williamsburg had not been required to use safety glass when the sliding door was first installed, a genuine issue of material fact would still exist as to whether Williamsburg was negligent in maintaining the plate-glass door by virtue of its knowledge that some of the sliding glass doors were made of plate glass and that plate glass, unlike safety glass, would shatter upon impact. Under R.C. 5321.04(A) (2), a landlord has a duty to "[m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." The purpose of the statute is to protect persons using rented residential premises from injuries.[7] As we have already stated, the failure of a landlord to comply with any of the duties described in R.C. 5321.04(A) renders the landlord liable for injuries proximately caused by the noncompliance.[8]
Gary Hussell, Williamsburg's maintenance manager, testified in his deposition that he had witnessed glass being removed from sliding doors that had been broken, and that the removed glass was not safety glass, but plate glass that had shattered when broken. Dawson's expert stated in his affidavit that the dangers of plate glass in sliding doors were well publicized in the residential rental industry. Construing this evidence in the light most favorable to Dawson, we conclude that a genuine issue of fact exists regarding whether Williamsburg breached a duty to Nikisha Dawson by not replacing the old plate glass with safety glass.
Even though Williamsburg was not specifically aware that any injuries had occurred because of the use of plate glass in its doors, it need only have been aware of the hazard or danger posed by the glass in order to be liable for negligence in maintaining the plate-glass doors.[9] In cases "where negligence revolves around the question of the existence of a hazard or defect," actual or constructive notice of the hazard or defect is a prerequisite to imposition of a duty.[10] In this case, it was the existence of glass that shattered upon impact that was the defective condition. The fact that no one at the site had been previously injured does not change the fact that Williamsburg was aware of a dangerous condition on its premises.
Dawson also argues that the plate-glass door constituted a nuisance. A nuisance consists "of an unreasonable interference with the use and enjoyment of the property of another."[11] In this case, the trial court correctly determined that no genuine issue of material fact existed as to this claim. There was no allegation in the complaint, and Dawson has failed to point to anything in the record, to support a contention that Dawson's use and enjoyment of her property was adversely affected by the existence of plate glass in her neighbor's sliding door. Summary judgment was appropriately entered on this claim.
We therefore reverse the judgment of the trial court in part. Summary judgment on Dawson's negligence claim should not have been granted in favor of Williamsburg on the state of this record. Genuine issues of material fact remain as to the duty owed to Nikisha (although a tenant, she was injured on another tenant's property, and not in a common area), whether that duty was breached, and whether Nikisha was injured as a result of the breach. This case is accordingly remanded to the trial court for further proceedings in accordance with law on the negligence claim only. The summary judgment granted to Williamsburg on the separate nuisance claim is affirmed.
Judgment affirmed in part, reversed in part, and causeremanded.
 HILDEBRANDT, P.J., DOAN and GORMAN, concur.
[1] See Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267, 274. See, also, Miller v. Bike Ath. Co. (1998), 80 Ohio St.3d 607, 687 N.E.2d 735.
[2] Civ.R. 56(C); Temple, supra, at 327, 364 N.E.2d at 274.
[3] Anderson v. Ceccardi (1983), 6 Ohio St.3d 110, 451 N.E.2d 780;Shroades v. Rental Homes, Inc. (1981), 68 Ohio St.2d 20,427 N.E.2d 774, syllabus.
[4] Nicholson v. Turner (1995), 107 Ohio App.3d 797,669 N.E.2d 529.
[5] Brennaman v. R.M.I. Co. (1994), 70 Ohio St.3d 460, 466,639 N.E.2d 425, 430.
[6] State v. Wemer (1996), 112 Ohio App.3d 100, 103,677 N.E.2d 1258, 1260; Yommer v. Outdoor Enterprises (1998),126 Ohio App.3d 738, 711 N.E.2d 296.
[7] Shroades, supra, 68 Ohio St.2d at 25, 457 N.E.2d at 778.
[8] Anderson, supra; Shroades, supra.
[9] See Shroades supra, at 25, 427 N.E.2d at 778 ("it must be shown that the landlord received notice of the defective condition of the rental premises").
[10] See Heckert v. Patrick (1984), 15 Ohio St.3d 402, 405,473 N.E.2d 1204, 1207-1208.
[11] Gaines v. Wyoming (1947), 147 Ohio St. 491, 72 N.E.2d 369, citing Taylor v. Cincinnati (1944), 143 Ohio St. 426,55 N.E.2d 724; see, also, Brown v. County Commissioners of Scioto County
(1993), 87 Ohio App.3d 704, 712, 622 N.E.2d 1153, 1158.