OPINION
{¶ 1} Robin and Jerry Maxson, husband and wife, are appealing from the decision of the Miami County Common Pleas Court granting summary judgment to Aaron and Jennifer Hammaker, husband and wife, on the Maxson's claim against the Hammakers for injuries caused to Robin by a defective appliance that had been supplied to the Maxsons by the Hammakers in the premises the Maxsons had rented from the Hammakers.
 {¶ 2} The Maxsons were also appealing from another decision of the trial court that held them liable to the Hammakers for the rest of the obligation on their lease for the premises that the Maxsons had vacated prior to its stated termination time. This issue, however, is no longer before this court as it had been settled by the parties prior to oral argument of this case. This was proven by documents submitted to this court and by the statements of the Maxsons' attorney at oral argument.
 {¶ 3} The only issue therefore before this court now is the appellants, the Maxsons', first assignment of error, as follows:
 {¶ 4} "1. The trial court held incorrectly that no issue of material fact exists as to whether the hammakers had constructive notice of the defective appliance they provided to the maxons."
 {¶ 5} The facts of this case and the reasoning of the trial court are set forth in the following portions of Judge Jeffrey M. Welbaum's decision, after deleting the court's discussion of the standards used by a court in granting summary judgment and the court's treatment of the issue of rent still due the Hammakers, which we have noted is no longer before this court:
 {¶ 6} "The following facts are not in dispute. The Hammakers rented the other side of their duplex to the Masons for a term from November 15, 2001. Mrs. Maxson was shocked by a 220 volt electric stove on May 2, 2000 [sic 2002], as she was attempting to pull her hand from the range oven door.
 {¶ 7} "When the Hammakers were notified of this on May 3, they had the stove inspected on May 4. The Hammakers called Jerry Cantrell, Mrs. Hammaker's father, because he is a journeyman electrician.
 {¶ 8} "As Mr. Hammaker watched, Mr. Cantrell removed the back panel of the stove. Mr. Cantrell discovered that the grounding wire inside was not fastened properly to the frame. He reattached the wire and tightened it with a nut, which fixed the problem. He then reinstalled the rear metal panel of the stove with screws to complete the repair. The uncontradicted deposition testimony of Mr. Cantrell indicated that the wall outlet which the electric range was plugged into was properly grounded.
 "* * * {¶ 9} "The stove was purchased as part of the real estate premises in August 2000. Prior to purchasing the property, the Hammakers had Brick Kickers Inspection Company inspect the premises for deficiencies. The inspection report noted at page 7 that Ground Fault Interrupters were not present and installation was recommended. Also, at page 7 there was a lengthy notation that there had been (unrelated) problems with the type of electrical breaker box that was present in the house. It was recommended as a minimum, that the electrical system be reviewed by a qualified electrician to insure safe operation. The inspector found nothing wrong with the stove.
 {¶ 10} "The Hammakers moved it out from the wall five to six inches when they painted the kitchen, without incident, after the inspection and prior to renting it to the Maxons. The Hammakers had no problems with the stove and no notice or indication that the stove was dangerous or deficient. The Maxons lived at the premises and used the stove for approximately one and one half years before Mrs. Maxon was injured and had no prior problems with the stove prior to the incident in question.
 "* * * {¶ 11} "The second subject [but the only subject on appeal] is the Maxons' counterclaim against the Hammakers. It contains claims of breaches of duties imposed by common law negligence and statutes.
 {¶ 12} "The Hammakers owed a common law duty to the Maxsons to act with reasonable care. That is, to behave as an ordinarily prudent person would under like circumstances. Also, the statutory law bestows duties upon the Hammakers owed to the Maxsons.
 {¶ 13} "The counterclaim filed by the Maxsons alleges violations of three subsections of O.R.C. 5321.04(A). Those are (A)(1), (A)(2), and (A)(4).
 {¶ 14} "O.R.C. 5321.04(A)(1) provides that a landlord who is a party to a rental agreement shall comply with the requirements of all applicable building, housing, health and safety codes which materially affect health and safety. Violations of the statute constitute negligence per se.
 {¶ 15} "O.R.C. 5321.04(A)(2) provides that a landlord who is party to a rental agreement shall make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition.
 {¶ 16} "O.R.C. 5321.04(A)(4) provides that a landlord who is party to a rental agreement shall maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by him.
 {¶ 17} "Mr. Cantrell testified during his deposition that prior to the repair the condition of the stove was in violation of the electrical code. Seemingly, the Maxsons would expect to prevail on the motion for summary judgment on this basis. However, the Ohio Supreme Court has repeatedly found that the landlord must have prior notice of the defect notwithstanding the language of the statute.
 {¶ 18} "In Shroades v. Rental Homes, Inc. (1981),68 Ohio St.2d 20, at 25-26 the high court stated:
 {¶ 19} "It must be shown that the landlord received notice of the defective condition of the rental premises, that the landlord knew of the defect, or that the tenant had made reasonable, but unsuccessful, attempts to notify the landlord.
 {¶ 20} "In Sikora v. Wenzel (2000), 88 Ohio St.3d 493,2000-Ohio-406, the court clarified the landlord's duties in regard to subsections (A)(1) and (A)(2) when it stated that a landlord's violation of his duties `will be excused from liability under either section if he neither knew or should have known of the factual circumstances that caused the violation.'
 {¶ 21} "The Second District Court of Appeals has discussed the distinction between (A)(2) repair cases, and (A)(4) maintenance cases two times. The first occasion was in Lansdalev. Dursch, Montgomery App. No. 16858, Unreported, November 6, 1998. Although most courts have applied the Shroades prior notice requirement to (A)(4), the Second District, found the standard of proof different. Our Court of Appeals found the differences in proof commensurate with the difference in the duties imposed by the two subsections.
 {¶ 22} "The court held that in an (A)(4) case,
 {¶ 23} ". . . if the tenant's basis for her claim is that the landlord breached his duty to maintain one of the appliances listed in subsection (A)(4), the tenant need only show that the landlord had actual or constructive notice that the appliance was improperly maintained. Such a showing may be demonstrated by inter alia, evidence regarding the procedures necessary to maintain the particular appliance; any inspection, testing, or lack of the same, of the appliance for defects; or the landlord's schedule for regular maintenance or lack thereof. (Citation Omitted). In addition, and as required by Shroades, the tenant must establish that the landlord's failure to maintain the appliance was the proximate cause of her injuries.
 {¶ 24} "The plaintiff in Lansdale, was injured from carbon monoxide fumes from an obstructed furnace flue. The tenant suspected she was becoming ill from the furnace and had complained repeatedly requesting to have the furnace inspected, to no avail. Not only did the landlord not have the furnace inspected for six years, he lied to the tenant by telling her that the furnace had been inspected and cleaned prior to her leasing the premises. Moreover, the landlord lied to the tenant, by telling her that the furnace did not need to be cleaned and inspected annually because of the installation of a heat pump.
 {¶ 25} "The Plaintiff established that the furnace should have been inspected and cleaned once a year. The court found that reasonable minds could differ as to whether the Defendant had actual or constructive notice of the defect from his failure to maintain the furnace.
 {¶ 26} "The Second District was presented with another (A)(2) maintenance case in Smith v. Ohio Edison, Inc., Clark App. No. 98CA37, January 8, 1999. In Smith, the Plaintiff rented an old farm house from the Defendant in March 1995. In exchange for reduced rent, Smith, a painter by trade, agreed to paint the building. He climbed a thirty foot extension ladder to begin the project. As he climbed the ladder he noticed three electrical wires running to the house to a point above a second story window then leading to an electrical meter box below. As he casually looked at the wires he did not notice any bare copper wire showing or any apparent defects.
 {¶ 27} "At the point when he began to use the power washer his feet were approximately one foot above the wires. The weatherproofing had disintegrated. As he began using the power washer he was knocked from the ladder by electrical current carried by water from the power washer coming in contact with bare copper wires. Smith landed on the wooden porch below. The impact from the fall nearly severed his spine. From this Smith was permanently paralyzed.
 {¶ 28} "From these facts the court ruled that the notice requirement on maintenance is determined by whether the landlord had notice that the wires were improperly maintained. The court found that the evidence created a genuine issue of material fact as to whether the landlord had constructive notice.
 {¶ 29} "In Smith, the electrical system was installed in approximately 1936. The court found it noteworthy that the landlord had never had the electrical system inspected and he had no regular maintenance schedule. The evidence presented by the tenant showed that the wiring was heavily oxidated and the weatherproofing had been deteriorated over a long period of time. The court found that the danger would have been discovered by an inspection because bare wiring was visible and large sections of weatherproofing had completely deteriorated.
 {¶ 30} "The Maxsons' first line of attack is that the stove is a defective electrical appliance provided by the landlord, so they should prevail under the language of the statute, even if the landlord did not have actual or constructive notice. The aforementioned cases do not support this proposition.
 {¶ 31} "The inspection report noted deficiencies in the electrical system where upgrades or inspections were recommended. In order to establish actual notice of the defective condition or constructive notice by lack of maintenance, the Maxsons view the entire electrical system as the `electrical appliance.' They view the stove as merely a component of the overall household electrical appliance.
 {¶ 32} "The Maxsons' theory is that the other portions of the electrical system, if upgraded as recommended, or further inspected, would have compensated for the defect in the stove and prevented the harm. Therefore, the electrical system was not properly maintained and summary judgment should be granted in their favor.
 {¶ 33} "In this way the Maxsons suggest by argument that it is reasonable to conclude that the lack of upgrades in the electrical system called for in the inspection report proximately caused Mrs. Maxon's injuries. However, the problem with this theory is they do not demonstrate this fact by any evidence nor provide any evidence from which the Court may infer this fact.
 {¶ 34} "Likewise, there is no showing that the electrical system, apart from the stove, was not in compliance with the electrical code. There is no affidavit or other evidence from any expert that installation of the recommended upgrades would have prevented the injury. These conclusions suggested by the Maxons are not self-evident to the Court or the fodder of judicial notice, even when construing the evidence most strongly in the Maxons' favor.
 {¶ 35} "Unlike Landsdale and Smith, the Maxons have not demonstrated that the defect in the stove is of the kind that would be likely discovered in a routine inspection. Secondly, the Maxons have not demonstrated that inspections of the interior of appliances is common or part of any industry standard, or the common practice of prudent, reasonable persons. Abbott v. HaightProperties, Inc., Lucas App. No. L-98-1413, April 28, 2000.
 {¶ 36} "At first blush, there seems to be a similarity between this case and Smith. Both involve an issue of maintenance of an electrical system. However, in Smith there was a defect that was apparent and would have been discovered upon inspection. Here, the defect was not reasonably discoverable. Here, the inspection did not find that the system was defective, it just recommended upgrades. The recommendations for electrical upgrades in the electrical outlets or further inspection of the electrical system concerning seemingly unrelated issues, does not constitute actual or constructive notice of a defective condition inside the electric stove.
 {¶ 37} "As in Abbott, the recommendations contained in the inspection report do not relate to a lack of maintenance. The condition of the electrical outlets and the electrical breaker box did not deteriorate over time. They did not develop due to a lack of preventative action. These were in a condition that existed from the time they were installed. The statute does not speak to landlord liability for lack of upgrades where there is no actual or constructive notice of an actual defective condition.
 {¶ 38} "Therefore, even when construing the evidence most strongly in favor of the Maxons, reasonable minds could not conclude that the Hammakers had actual or constructive notice of the defect in the inside of the electric stove, or any defect in the electrical system which if upgraded, would have prevented the harm to Mrs. Maxon.
 {¶ 39} "It is therefore ordered, that the Motion for summary judgment of Plaintiffs Hammakers is granted and Defendant Maxons' motion for summary judgment is hereby overruled."
 {¶ 40} The arguments presented by counsel to the Maxsons both in their brief and at oral argument were vigorously presented to the trial court, as the record proves, and the trial court dealt with them in the portions of its opinion which we have quoted above. The key to this case is that the hidden defect in the stove would not be and, in fact, was not ordinarily discoverable by an inspection ordered by the landlord Hammakers which, as the trial court pointed out, distinguishes this case from the two cases of this court cited by the appellants, that is Lansdale v.Dursch (Nov. 6, 1998), Montgomery App. No. 16858 and Smith v.Ohio Edison, Inc. (Jan. 8, 1999), Clark App. No. 98 CA 37.
 {¶ 41} The sole assignment of error is overruled and the judgment is affirmed.
Fain, P.J. and Wolff, J., concur.