Carr, Judge,
dissenting.
{¶ 20} I respectfully dissent because I disagree with the majority’s conclusion that R.C. 4169.08(C) establishes a statutory duty of care between skiers. This provision should be construed within the context of the overall framework of R.C. Chapter 4169 and the legislature’s intent in codifying specific “responsibilities” of a skier. See Shroades v. Rental Homes, Inc. (1981), 68 Ohio St.2d 20, 24-26, 22 O.O.3d 152, 427 N.E.2d 774 (focusing on the intent of the General Assembly in enacting the entire R.C. Chapter 5321 to determine whether R.C. 5321.04 created a civil standard of care by a landlord to a tenant).
{¶ 21} The Ohio General Assembly enacted R.C. 4169.01 through 4169.10 and R.C. 4169.99 in 1980 as part of a comprehensive statutory scheme similar to others around the country. Responding to the decision of the Vermont Supreme Court in Sunday v. Stratton Corp. (1978), 136 Vt. 293, 390 A.2d 398, in which it upheld a $1.5 million damage award in favor of a skier injured at a ski area, many states enacted similar statutes “to limit liability of ski area operators and thereby preserve the economic benefit reaped by the states from the ski industry.” McCafferty, Skiers Find the “Fall Line” in Challenging the Constitutionality of Modern Ski Legislation (1991), 1 Seton Hall J.Sport L. 269. Although most are identified as ski-safety statutes, as observed by the Supreme Court of Connecticut, the specific intention of the legislation was to “preclude ski area operator liability for injuries arising out of inherent risks of the sport, while at the same time allowing claims sounding in negligence arising out of the risks that are preventable by the ski area operator.” Jagger v. Mohawk Mountain Ski Area, Inc. (2004), 269 Conn. 672, 849 A.2d 813, 825.
{¶ 22} This intent is evident in R.C. Chapter 4169. In R.C. 4169.08(A)(1), the General Assembly explicitly “recognizes that skiing as a recreational sport is hazardous to skiers regardless of all feasible safety measures that can be taken. It further recognizes that a skier expressly assumes the risk of and legal *15 responsibility for injury, death, or loss to person or property that results from the inherent risks of skiing[.]” The statute sets forth a lengthy, but nonexhaustive, list of certain specific risks that are inherent in skiing that skiers expressly assume. R.C. 4169.08(B) then enumerates specific “legal responsibilities of a ski area operator to a skier with respect to any injury, death, or loss to person or property,” and if the operator fails to comply with those responsibilities, it will be subject to liability for skiers’ resulting injuries. In turn, subsection (C) sets forth certain reciprocal responsibilities that skiers owe the ski-area operator to keep the area safe by protecting themselves and others. Although the responsibilities include maintaining control of speed and course and refraining from causing a collision with another person while skiing, I do not believe that this language was intended to create a specific standard of care owed by one skier to another. See R.C. 4169.08(C)(1) and (2).
{¶ 23} Reading the language of R.C. 4169.08 along with R.C. 4169.09 does not defeat such a construction. R.C. 4169.09 provides that a “skier is liable for injury, death, or loss to person or property caused by the * * * skier’s failure to fulfill any of the responsibilities required by this chapter.” Although the majority construes this language as imposing civil liability on a skier who causes another skier’s injury by failing to comply with R.C. 4169.08(C), this language can also be construed to mean that a skier is liable for her own injuries if she fails to comply with her responsibilities to the ski-area operator under R.C. 4169.08(C). Given the ambiguity, I would apply the latter construction of R.C. 4169.09 in keeping with the intention of this legislation to define the boundaries of liability on the part of the ski-area operator, not to codify a new standard of care for those who participate in the sport of skiing. See R.C. 1.49(A) and (B).
{¶ 24} Moreover, R.C. Chapter 4169 applies only to those who ski at ski areas, as the term “skier” is defined to include only those who use the “facilities of a ski area,” not those who ski elsewhere. R.C. 4169.01(A). If the goal of R.C. Chapter 4169 were to create new standards of care between those who participate in the sport of skiing, the legislature could have defined the term “skier” more broadly to include those who ski at public parks, private slopes, and on other property that does not qualify as a ski area. The majority’s construction of R.C. 4169.08(C) imposes specific duties between skiers, but only when they are skiing at a ski area. See R.C. 1.49(E). If the legislature had intended to enact specific tort duties between skiers, I believe that it would have imposed those duties on all participants in the sport, regardless of where they ski.
{¶ 25} Therefore, I would overrule the first assignment of error. I would also overrule the second assignment of error because the Horvaths have failed to oppose the motion for summary judgment with any evidence that the collision, and Horvath’s resulting injuries, were the result of any reckless or intentional *16 misconduct by David Ish. I would affirm the trial court’s decision to grant summary judgment to the Ishes.