THRASH, APPELLANT, *v.* HILL, APPELLEE.

[Cite as Thrash v. Hill (1980), 63 Ohio St. 2d 178.]

(No. 79-1357—Decided July 16, 1980.)

*Messrs. Shepard & Hilton, Mr. Richard S. Rust, IV,* and *Mr. Sal G. Scrofano,* for appellant.

*Mr. Stanley Hirtle,* for Legal Aid Society of Cincinnati.

*Mr. Allen Brown,* for appellee.

*Per Curiam.* Pursuant to Civ. R. 56(C), summary judgment may be rendered where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Further, the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. Summary judgment may not be rendered unless it appears that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made.

In this cause, the courts below held that appellant was not entitled to the relief demanded because, as a landlord out of possession and control of the premises, appellee had no common law duty to make repairs of the premises, for the breach of which he could be held responsible in tort. *Burdick* v. *Cheadle* (1875), 26 Ohio St. 393; *Shindelbeck* v. *Moon* (1877), 32 Ohio St. 264; *Stackhouse* v. *Close* (1911), 83 Ohio St. 339; *Berkowitz* v. *Winston* (1934), 128 Ohio St. 611; *Ripple* v. *Mahoning Natl. Bank* (1944), 143 Ohio St. 614; *Cooper* v. *Roose* (1949), 151 Ohio St. 316; *Brown* v. *Cleveland Baseball Co.* (1952), 158 Ohio St. 1; *Pitts* v. *Cincinnati Metro. Housing Auth.* (1953), 160 Ohio St. 129. The lower courts further held, in adopting the Landlords and Tenants Act of 1974, that the General Assembly neither intended to, nor did, create a right in derogation of the common law in a tenant to recover in tort for personal injuries sustained as a result of a landlord's failure to keep the leased premises in good repair.

In this Act, the General Assembly enacted comprehensive legislation dealing with the relationship between landlords and tenants under residential rental agreements. The Act imposed obligations upon landlords and tenants which did not exist under common law. For instance, R. C. 5321.04 provides:

"(A) A landlord who is a party to a rental agreement shall:

"* * *

"(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition."

The Act confers a right of access to enable the landlord to carry out his statutory responsibility:

"The tenant shall not unreasonably withhold consent for the landlord to enter into the dwelling unit in order to inspect the premises, make ordinary, necessary, or agreed repairs, * * * supply necessary or agreed services, or exhibit the dwelling unit to***workmen, or contractors." R. C. 5321.05(B).

The landlord is first obligated however "* * *[e]xcept in the case of emergency or if it is impracticable to do so, [to] give the tenant reasonable notice of his intent to enter and enter only at reasonable times. Twenty-four hours is presumed to be a reasonable notice in the absence of evidence to the contrary." R. C. 5321.04. If the tenant withholds consent for the landlord to enter to inspect and make repairs, the landlord may recover any actual damages which result together with reasonable attorney's fees; terminate the rental agreement; or maintain an action for possession of the premises, or injunctive relief to compel access. R. C. 5321.05(C). If the landlord abuses his right of access by making an entry without satisfying the notice requirement, or makes a lawful entry in an unreasonable manner, or makes repeated demands for entry otherwise lawful which have the effect of harassing the tenant, the tenant may recover actual damages resulting therefrom and obtain injunctive relief to prevent the recurrence of the conduct, and, if he obtains a judgment, reasonable attorney's fees as well. Alternatively, he may terminate the rental agreement. R. C. 5321.04(B).

If a landlord fails to fulfill any of the obligations imposed upon him by R. C. 5321.04, including his obligation to make necessary repairs, the Act provides the affected tenant specific statutory remedies. R. C. 5321.07 provides a procedure whereby a tenant may give written notice to the landlord specifying the acts, omissions or code violations which constitute failure of the landlord's obligations. If within a reasonable time thereafter the landlord fails to remedy the condition, and if the tenant is current in his rent payments, the

tenant may deposit his rent payments with the clerk of court or apply to the court for an order directing the landlord to remedy the condition. The court may order a rent reduction until the landlord's obligations are fulfilled, and may order the rent deposited with the clerk to be used to remedy the condition. The statute also allows the tenant to terminate the rental agreement where the landlord fails to fulfill his obligations. R. C. 5321.07(B)(3).[1] Where the tenant acts in bad faith in resorting to the remedies provided by R. C. 5321.07, or if the condition complained of was the result of an act or omission of the tenant, the tenant may be held liable to the landlord for damages and costs, and, if the tenant intentionally acted in bad faith, for reasonable attorney's fees. The landlord may, in certain circumstances, obtain partial release of the rent escrowed with the court. R. C. 5321.09; R. C. 5321.10.

In *Laster* v. *Bowman* (1977), 52 Ohio App. 2d 379, at 382, the court noted that the Landlords and Tenants Act "***establishes various rights and obligations between landlords and tenants in the state of Ohio, now governs the relationship between such parties with regard to rental agreements on residential premises and supersedes all prior Ohio law concerning the rights and obligations encompassed by the act. The new law also provides the *exclusive* remedies now available to landlords and tenants as to the rights and obligations contained in the Act." (Emphasis added.)

Thus, the General Assembly, in 1974, undertook to balance the competing interests of landlords and tenants and enacted a statutory scheme establishing a complex interrelationship of obligations and remedies. We find no express statutory establishment of a cause of action in tort against a landlord who does not satisfy the obligations imposed upon him by R. C. 5321.04.[2]

---

[1] The remedies summarized in this paragraph are not, however, available to a tenant whose landlord is a party to any rental agreements which cover three or fewer dwelling units and who has been given written notice of that fact at the time of initial tenancy. R. C. 5321.07(C).

[2] Cf. Mass. Anno. Laws, Chapter 186, Section 19, as follows:

"A landlord or lessor of any real estate except an owner-occupied two or three-family dwelling shall, within a reasonable time following receipt of a written notice from a tenant forwarded by registered or certified mail of an unsafe condition, not caused by the tenant, his invitee, or any one occupying through or under the tenant,

It is argued that R. C. 5321.12 provides the tenant with a cause of action in tort against his landlord. That section provides:

"In any action under Chapter 5321 of the Revised Code, any party may recover damages for the breach of contract or the breach of any duty that is imposed by law."

An action in tort alleging negligence of a landlord is not, however, "any action under Chapter 5321 of the Revised Code," *e.g.,* tenant actions applying for court orders to repair (R. C. 5321.07[B][2] ); landlord actions for release of escrowed rent (R. C. 5321.09 and R. C. 5321.10). On the contrary, an action in tort is a remedy established by the common law.

In *Tair* v. *Rock Investment Co.* (1942), 139 Ohio St. 629, the court was faced with the question of whether a penal sanitary regulation contained in the Municipal Code of the city of Cleveland imposed a duty for the breach of which a landlord could be held strictly liable in tort. The court responded, at page 632:

"A majority of the members of this court are of the opinion that if any such change is to be injected into the law, it should be based upon express legislative enactment and not upon judicial inference."

As in *Tair,* and especially in light of the failure of the General Assembly to abrogate the common law rules of landlord tort liability despite its adoption of comprehensive landlord-tenant legislation in 1974, we hold that because appellant made no showing of landlord possession and control over the area where appellant's injuries occurred, which showing is requisite to the establishment of landlord liability under the common law, summary judgment in favor of the landlord was properly rendered.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

---

exercise reasonable care to correct the unsafe condition described in said notice***. *The tenant or any person rightfully on said premises injured as a result of the failure to correct said unsafe condition within a reasonable time shall have a right of action in tort against the landlord or lessor for damages.* Any waiver of this provision in any lease or other rental agreement shall be void and unenforceable.***" (Emphasis added.)

HERBERT, W. BROWN, P. BROWN and HOLMES, JJ., concur.

CELEBREZZE, C. J., SWEENEY and LOCHER, JJ., dissent.

SWEENEY, J., dissenting. The court today holds that the Landlords and Tenants Act of 1974 had no effect on the common law rules under which a landlord's liability in tort has historically been determined. Specifically, the court holds that R. C. 5321.04 does not establish duties or standards of conduct for the breach of which a tenant may hold his landlord liable in tort. I respectfully dissent.

In my opinion, the statutory remedies provided in R. C. Chapter 5321 are cumulative to whatever remedies may exist under the common law. For example, I believe that the rent escrow mechanism established by the Act was adopted simply in order to provide an added means by which a tenant may retain possession of the rental premises while prodding his landlord to comply with his statutory duties.

I believe the majority's failure to recognize the availability of an action in tort against a landlord under circumstances such as are alleged in this cause unjustifiably constitutes a failure to distinguish between mechanisms of prevention and mechanisms of cure. Thus, in an action alleging the failure of a landlord to comply with statutory obligations and seeking to hold the landlord responsible in tort for personal injuries, the damage or injury which the statute attempts to prevent allegedly has, despite the statute, occurred. An injured tenant—for example, one who has been lulled into inaction by a landlord's representations of good intentions—may be unjustly left without a meaningful remedy under the majority's holding.

The law of negligence revolves around the fundamental proposition that one who is factually responsibile for an injury or other damage as a result of his failure to adhere to a standard of conduct or duty required of him should be held legally and financially responsible to the injured person. *Di Gildo* v. *Caponi* (1969), 18 Ohio St. 2d 125. I can see no reason why landlords, most of whom conduct the business of renting residential premises for the production of profit, should be exempted from the operation of such fundamental legal doc-

trines. In some circumstances, the application of traditional tort principles will result in a finding that the tenant, himself, is legally responsible for his injuries. Under other sets of facts the injured party may properly seek compensation from his landlord. However, the majority, in sustaining this summary judgment in favor of the landlord, holds that, as a matter of law, a landlord out of possession and control may not be held liable in tort for an injury occurring as the result of the disrepair or defective condition of premises, irrespective of whether the defective condition is attributable to the acts or omissions of the landlord. I believe that upon close scrutiny of Ohio case law it becomes apparent that the underpinnings of the common law rules have been extinguished by the General Assembly. I further believe that there is no rational justification, legally, morally or economically, for singling out landlords for such unique treatment under the law.

Thus, I believe that, upon finding no express statutory abrogation of the common law landlord tort immunity, this court should itself reexamine the common law rule in light of modern circumstances and the public policy reflected in the Landlords and Tenants Act:

"***A rule which in its origin was the creation of the courts themselves, and was supposed in the making to express the *mores* of the day, may be abrogated by courts when the *mores* have so changed that perpetuation of the rule would do violence to the social conscience.***[P]lainly permissible at all times is continuing adaptation to varying conditions. This is not usurpation. It is not even innovation. It is the reservation for ourselves of the same power of creation that built up the common law through its exercise by the judges of the past." Hall, ed., Selected Writings of Benjamin Nathan Cardozo, The Growth of the Law, 185, 246.[3]

---

[3] See, also, Justice Moran's dissent in *Dapkunas* v. *Cagle* (1976), 42 Ill. App. 3d 644, 356 N.E. 2d 575, where, in reference to the traditional doctrine of *caveat emptor* in real estate leasing, upon which the landlord's traditional tort immunity rests, he states, at page 653, as follows:

"Perhaps one of the most well-recognized yet unexplained phenomena of the common law is *stare decisis*—the principle that courts will stand by precedent and refuse to disturb a settled point. No doubt wisdom and authority are construed as a function of time, the theory being that a principle of long-standing nature could not weather the attacks made upon it over the years unless it is a well-reasoned interpretation of the

On the basis of such a reexamination I believe this court should join the growing ranks of courts which have abolished the common law web of landlord tort rules and exceptions, and allow traditional tort theories to control.

The General Assembly by adopting R. C. 5321.04 has mandated that:

"(A) A landlord who is a party to a rental agreement shall:

"* * *

"(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition."

Regardless of whether one interprets this statutory language as imposing a "duty" sounding in tort or an "obligation" sounding in contract, it is clear that under the common law in Ohio, absent landlord retention of possession and control, no corresponding responsibility existed in the landlord to make repairs.[4] The new law additionally provides a landlord a

---

law. This concept is not without some respectable rationale, for a doctrine of considerable years has been scrutinized and ultimately sustained by noted scholars of the law. But time-honored expressions and guidelines are not always accurate or appropriate. Sometimes the blessings of time have worked to perpetuate a proposition far beyond the period of its usefulness and relevance to society and have maintained its influence after the reasons giving rise to its existence have long since been forgotten."

[4] See, *e.g., Burdick* v. *Cheadle* (1875), 26 Ohio St. 393, 397 ("* * *There is no implied engagement or promise, on the part of a lessor, that the leased premises are in a safe condition, or that they are fit for the use to which the lessee intends to put them. If they be unsafe or unfit, it is the duty of the tenant to make them safe, or to fit them for the intended use; and the landlord may reasonably expect that the tenant will do so."); *Shindelbeck* v. *Moon* (1877), 32 Ohio St. 264, 275 ("The rule, therefore* * *is this: A landlord who is out of possession of the premises, by virtue of a demise, and who has no control over them; who could not have the right to enter therein, even to make repairs, without his tenant's consent, is not liable for accidents occasioned by the fact that the property is temporarily out of repair."); *Stackhouse* v. *Close* (1911), 83 Ohio St. 339, 351 ("A lessor of a building is not liable to the lessee or others lawfully on the premises, for its condition, *in the absence* of actual or constructive concealment, of any agreement, or *of the violation of a duty imposed by statute.* * * *If there is any liability on the part of the landlord,* * *it must arise out of the obligations imposed on him under the leasing contract, or *an account of some duty created by statute."* [Emphasis added.]); *Pitts* v. *Cincinnati Metro. Housing Auth.* (1953), 160 Ohio St. 129, paragraphs three and four of the syllabus ("3. One having neither occupation nor control of premises ordinarily is under *no legal duty* to an invitee of another with respect to the condition or use of these premises.* * * 4. In order to have the occupation or control of premises necessary to impose such legal duty with respect to the condition or use of those premises, one must ordinarily have the power and the right to admit such individuals to the premises or to exclude them from the premises." [Emphasis added.] ).

right of access unknown to the common law to inspect premises and make repairs, if needed. Thus, although the General Assembly may not have expressly abrogated the landlord's common law tort immunity, it has certainly stripped away the underpinnings upon which it is dependent.

The courts below held that, whatever the effect of R. C. 5321.04, it did not impose duties the breach of which may constitute negligence. Such a construction of the statute stands in direct contravention to the long-established rule of law that the violation of a statutorily-imposed standard of conduct constitutes negligence *per se. Schell* v. *DuBois* (1916), 94 Ohio St. 93. The fact that a statute may establish such a standard of conduct in the landlord-tenant area was recognized by this court in *Grieser* v. *Huntington Natl. Bank* (1964), 176 Ohio St. 291. This court held that the owner in fee of rental property was not to be held negligent on the basis of the alleged violation of a criminal section of the Revised Code forbidding the use of non-vented, gas fired, space heaters because the use of the term "owner or occupant" in the statute did not encompass a landlord who was out of possession and control and who was not connected with the installation, maintenance or operation of such heating devices. The court, at page 294, recognized, however, that "***although in itself***[the criminal statute] creates no civil liability, it does prescribe a specific duty and sets forth a standard of conduct, the violation of which may be classed and treated as negligence." In contrast to the statute at issue in *Grieser*, it is abundantly clear that R. C. 5321.04 is directed towards, and establishes standards of conduct required of, landlords.

Abrogation of the traditional landlord immunity in tort is almost uniformly advocated by legal commentators. Although noting that, in the past, courts have split on the issue whether breach of a statutory duty to keep premises in repair may serve as the foundation for tort liability, it is stated in 2 Powell on Real Property 357, Paragraph 234 [2], that:

"In general, it can be said that the efficacy of a statutory duty is greatly enhanced by the collateral sanction of tort liability for a violation."

Restatement of Property 2d 232, Landlord and Tenant, Section 17.6, provides:

"A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenant by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:

"(1) an implied warranty of habitability; or

"(2) a duty created by statute or administrative regulation."

The Comment to the section explains its rationale:

"Insofar as a duty created by a statute or administrative regulation is concerned, the rule of this section is based on the assumption that the statute or regulation represents a legislative determination of the standard of conduct required of the landlord***. The tort liability of the landlord in this situation tends to increase the likelihood that the will of the legislature as expressed in the statute or regulation will be effectuated."

In Prosser on Torts (4 Ed.), 400, Section 63, it is stated:

"Modern ideas of social policy have given rise to a number of exceptions to these general rules of non-liability of the lessor***. There is increasing recognition of the fact that the tenant who leases defective premises is likely to be impecunious and unable to make the necessary repairs, and that the financial burden is best placed upon the landlord, who receives a benefit from the transaction in the form of rent. This policy is expressed by statutes in a number of states, which require the landlord to put and keep certain types of premises, such as tenement houses, in good condition and repair, and have been held to impose liability in tort upon him for his failure to do so."

Professor Prosser also notes that a once widely-recognized rule—that a tenant's sole remedy where his landlord is in breach of a contract to keep premises in repair is an action in contract for the breach— [5] has become the minority position. "A slowly increasing number of the courts, which by now has reached a slight majority, have worked out a liability in tort for

---

[5] See *Cooper* v. *Roose* (1949), 151 Ohio St. 316, 321.

such injuries to person or property, finding a duty arising out of the contract relation." Prosser, *supra,* at page 409.

It is stated in Annotation, Modern Status of Landlord's Tort Liability for Injury or Death of Tenant or Third Person caused by Dangerous Condition of Premises, 64 A.L.R. 3d 339, 346, that:

"The common-law rules governing the relationship of landlord and tenant which substantially absolved the landlord of responsibility in tort for injury caused by the condition of the premises have been subjected to strong criticism as irrelevant to the realities of the landlord and tenant relationship under modern urban conditions."[6]

In recent years the highest courts of the states of New Hampshire, Michigan, New York, Oregon, Iowa, Massachusetts and Wisconsin, have either abolished in part or in full the landlord's traditional protections from tort immunity.[7] Other state courts have either adopted the position or recommended its adoption.[8]

---

[6] See, *e.g.,* Quinn & Phillips, The Law of Landlord-Tenant: A Critical Evaluation of the Past With Guidelines for the Future, 38 Fordham L. Rev. 225 ("* * *[T]he law in this area is a scandal. More often than not unjust in its preference for the cause of the landlord, it can only be described as outrageous when applied to the poor urban tenant in the multi-family dwelling.* * *The trouble is not that we fail to apply properly and effectively the law that is in force, but that the present law is grossly inadequate. It is just bad law. One can understand how it developed, but it is incomprehensible that responsible men and women who are normally alert to intolerable social conditions in other societies can be so blind and complacent with respect to their own shameful system."); Love, Landlord's Liability for Defective Premises: Caveat Lessee, Negligence, or Strict Liability? 1975 Wis. L. Rev. 19; Notes, Lessor's Duty to Repair: Tort Liability to Persons Injured on the Premises, 62 Harv. L. Rev. 669; Case Notes, The Fall of Landlord Tort Immunity—*Sargent v. Ross,* 308 A. 2d 528 (1973), 35 Ohio St. L.J. 212.

[7] *Sargent v. Ross* (1973), 113 N.H. 388, 308 A. 2d 528; *Mobil Oil Corp. v. Thorn* (1977), 401 Mich. 306, 258 N.W. 2d 30; *Putnam v. Stout* (1976), 38 N.Y. 2d 607, 381 N.Y. Supp. 2d 848; *Brewer v. Erwin* (1979), 287 Ore. 435, 600 P. 2d 398; *Mease v. Fox* (Iowa 1972), 200 N.W. 2d 791; *Young v. Garwacki* (Mass. 1980), 402 N.E. 2d 1045; *Pagelsdorf v. Safeco Ins. Co.* (1979), 91 Wis. 2d 734, 284 N.W. 2d 55. See, also, *Francis v. Pic* (N.D. 1975), 226 N.W. 2d 654; *Steele v. Latimer* (1974), 214 Kan. 329, 521 P. 2d 304; *Teller v. McCoy* (W. Va. App. 1979), 253 S.E. 2d 114; *Pugh v. Holmes* (Pa. 1979), 405 A. 2d 897.

[8] *Brennan v. Cockrell Investments, Inc.* (1973), 35 Cal. App. 3d 796, 111 Cal. Rptr. 122; *Presson v. Mountain States Properties, Inc.* (1972), 18 Ariz. App. 176, 501 P. 2d 17; *Mansur v. Eubanks* (Fla. App. 1979), 368 So. 2d 645 (concurring opinion); *Old Town Development Co. v. Langford* (Ind. 1976), 349 N.E. 2d 744; *Dapkunas v. Cagle* (1976), 42 Ill. App. 3d 644, 356 N.E. 2d 575 (dissenting opinion).

I would reverse the decision of the court below, adopt the position set forth in Restatement of Property 2d, *supra,* and remand this cause for a development of the facts and the application of traditional tort doctrines to those facts.

CELEBREZZE, C. J., and LOCHER, J., concur in the foregoing dissenting opinion.