[Cite as *Mota v. Gruszczynski*, 197 Ohio App.3d 750, 2012-Ohio-275.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No.   97089

# MOTA ET AL.,

APPELLANTS,

v.

# GRUSZCZYNSKI ET AL.

APPELLEES.

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-731900

**BEFORE:**     Boyle, P.J., Cooney, J., and Rocco, J.

**RELEASED AND JOURNALIZED:**     January 26, 2012

**ATTORNEYS:**

Goldstein & Goldstein Co., L.P.A., Michael D. Goldstein, and Ladi Williams, for appellants.

Williams, Moliterno & Scully Co., L.P.A., and William F. Scully Jr., for appellees.

MARY J. BOYLE, Presiding Judge.

{¶ 1} Plaintiff-appellant, Thomas Mota, a licensed bounty hunter, was attacked by a dog while pursuing Jerome J. Gruszczynski inside the residence of Jerome J.'s parents—the defendants-appellees, Jerome M. and Marion Gruszczynski. Mota and his wife, Bryn, subsequently brought a lawsuit against Jerome M. and Marion, alleging claims for (1) negligence, (2) strict liability under R.C. 955.28(B) (Ohio's dog-bite statute), and (3) loss of consortium. The trial court granted the Gruszczynskis' motion for summary judgment, and Mota and his wife now appeal, raising the following single assignment of error:

{¶ 2} "The trial court erred in granting defendants-appellees' motion for summary judgment."

{¶ 3} We affirm.

### Procedural History and Facts

{¶ 4} In late July 2009, Mota, a licensed surety bail agent ("bounty hunter"), received a contract from ABC Bail Bonds to arrest Jerome J., who had failed to appear in municipal court on the charge of driving under suspension.

{¶ 5} Although not living at Jerome M. and Marion's home on East 55th Street in Slavic Village, Jerome J. was taking care of the house while his parents were in Florida. Jerome J. was living with his girlfriend at her father's house, which was within walking distance of his parents' home. Jerome J.'s dog, "Buckshot," however, had delivered

puppies at his parents' house a few days before Mota came with his team. With his parents' permission, Jerome J. left Buckshot and the puppies on his parents' back porch, where he checked on them daily.

{¶ 6} Acting on a tip from Cuyahoga Heights police that Jerome J. may be at his parents' house, Mota, along with two other bounty hunters, went to the East 55th Street address on July 27, 2009. They discovered Jerome J. sitting in the fenced-in backyard with two friends, drinking beer. As soon as Mota and his team displayed their badges, Jerome J. fled into the house through the back door. Mota pursued him onto the back porch where he was immediately confronted by Buckshot, who bit his hand and would not let go. Once Mota freed his hand, Buckshot continued to attack him, forcing him out of the house and biting his left wrist. Mota backed away, and Buckshot bit his scrotum and thigh. Mota eventually escaped over the fence.

{¶ 7} Following the incident, Mota commenced the underlying action against Jerome J. and his parents, Jerome M. and Marion, alleging that they were liable for the injuries that he sustained from Buckshot. Jerome J. did not file an answer and is not a party to this appeal. The trial court ultimately granted summary judgment in favor of Jerome M. and Marion, finding that they were not strictly liable under the dog-bite statute because Mota was trespassing at the time of the attack. The court additionally found that they could not be liable for common-law negligence, because keeping the dog in an enclosed porch does not constitute willful, wanton, or reckless conduct likely to injure a third person. Additionally, having found that Mota's claims failed as a matter

of law, the court further held that his wife's loss-of-consortium claim failed too.

## Standard of Review

**{¶ 8}** We review an appeal from summary judgment under a de novo standard. *Baiko v. Mays*, 140 Ohio App.3d 1, 10, 746 N.E.2d 618 (8th Dist.2000). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997).

**{¶ 9}** Civ.R. 56(C) provides that before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 191, 672 N.E.2d 654 (1996).

**{¶ 10}** The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant fails to meet this burden, summary judgment is not appropriate, but if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. *Id*. at 293.

## Ohio's Dog-Bite Statute, R.C. 955.28

{¶ 11} Mota seeks to impose strict liability upon Jerome M. and Marion under Ohio's dog-bite statute, R.C. 955.28(B), which provides as follows:

> The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the time, *was committing or attempting to commit criminal trespass* or another criminal offense other than a minor misdemeanor on the property of the owner, keeper, or harborer, or was committing or attempting to commit a criminal offense other than a minor misdemeanor against any person, or was teasing, tormenting, or abusing the dog on the owner's, keeper's, or harborer's property. Additionally, the owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog if the injury, death, or loss was caused to the person or property of an individual who, at the time of the injury, death, or loss, was on the property of the owner, keeper, or harborer solely for the purpose of engaging in door-to-door sales or other solicitations regardless of whether the individual was in compliance with any requirement to obtain a permit or license to engage in door-to-door sales or other solicitations established by the political subdivision in which the property of the owner, keeper, or harborer is located, provided that the person was not committing a criminal offense other than a minor misdemeanor or was not teasing, tormenting, or abusing the dog.

(Emphasis added.)

{¶ 12} Mota argues that the trial court wrongly applied the law governing "civil trespass" as the standard in determining that Jerome M. and Marion had a statutory defense—the standard prior to the 2008 amendment to the statute. Under the new amendment, which was in effect when the dog bite occurred, a civil trespass is not enough; a defense arises only if the plaintiff was "criminally" trespassing on the property. Mota contends that his claim must survive summary judgment as there is no

support that he was criminally trespassing. The Gruszczynskis concede that the current version of R.C. 955.28(B) limits the trespass defense to only criminal trespass (as opposed to both civil and criminal trespass) but contend that Mota's actions constitute a criminal trespass, i.e., he entered their property without their consent and without privilege to do so.

Relevance of Bounty-Hunter Statute, R.C. 2713.22, to

Criminal Trespass, as Defined in R.C. 2911.21

**{¶ 13}** R.C. 2911.21, which governs criminal trespass, provides:

> No person, without privilege to do so, shall [k]nowingly enter or remain on the land or premises of another. R.C. 2901.01(A)(12) defines "privilege" as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."

**{¶ 14}** Mota contends that he was "privileged" to enter the home of Jerome M. and Marion because he was acting on a warrant to arrest their son. In essence, he maintains that his status as a bounty hunter grants him the privilege to enter the property of third parties who are not subject to the warrant, and that such privilege defeats the "trespasser" defense in R.C. 955.28(B). In support of his argument, Mota relies on R.C. 2713.22, which provides: "For the purpose of surrendering the defendant, *the bail may arrest him at any time or place* before he is finally charged, or, by a written authority indorsed on a certified copy of the bond, may empower any person of suitable age and discretion to do so." (Emphasis added.)

**{¶ 15}** Initially, we note that *no* Ohio court has interpreted R.C. 2713.22 as

providing carte blanche authority to a bounty hunter in pursuit of a fugitive to enter the dwelling of a third party who is not a party to the bail contract. Indeed, we find only one case that has even discussed R.C. 2713.22 since its passage in 1953—*State v. Kole*, 92 Ohio St.3d 303, 750 N.E.2d 148 (2001). In *Kole*, a bail-bond company contracted with Kole, a bounty hunter, to apprehend a fugitive. *Id.* at 303. In the course of pursuing the fugitive, Kole entered the residence of a third party without permission. *Id.* at 304. Kole was subsequently indicted on several criminal offenses, including abduction and burglary, related to his entry of the premises and was found guilty on all counts. His conviction was upheld by the court of appeals. *Id.*

{¶ 16} At trial, Kole's defense counsel relied on case law for the proposition that a common-law defense existed for bounty hunters pursuing a fugitive, and that based on this authority, Kole had an absolute privilege to enter the home of a third party. *Id.* at 305. Defense counsel, however, failed to cite or present R.C. 2713.22 as an alternative theory in defending the charges. The Ohio Supreme Court found this to be ineffective assistance of counsel and remanded the matter for a new trial. In doing so, however, the Ohio Supreme Court expressly declined to hold that R.C. 2713.22 authorized a bail bondsman as a matter of law to enter the home of a third party for purposes of apprehending a fugitive when the third party is not a party to the bail contract. *Id.* at 308. The court specifically declined to recognize an "absolute privilege" to enter the home of a third party. Instead, the *Kole* decision addressed the issue whether defense counsel was ineffective in failing to argue R.C. 2713.22 as a statutory defense to the

crimes charged.

{¶ 17} While we recognize that *Kole* may be instructive in cases where a bounty hunter is facing criminal prosecution in connection with his pursuit of a fugitive, we do not find it to be controlling in the present case. Notably, Mota is not relying on R.C. 2713.22 as a defense to a criminal prosecution or even as an excuse to avoid civil liability. Instead, he seeks to use the statute for purposes of establishing a "privilege" to defeat the "trespasser" defense in R.C. 955.28(B) and recover monetary damages. We fail to find any support for such use of the statute. Nor do we believe that to be the intended use of the statute.

{¶ 18} Indeed, like the trial court, we find that the statute, at best, operates to provide a privilege to a bounty hunter as a shield from criminal or civil liability for a criminal or civil trespass. It does not, however, operate to negate the bounty hunter's status as a trespasser or licensee as a means to give the bounty hunter an advantage in the pursuit of recovering money damages. Such an allowance would be contrary to well-established Ohio law—one cannot assert a privilege as both a shield and a sword. *See, e.g.*, *Squire, Sanders, & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 41 (holding, in part, that "a client may not rely on attorney-client communications to establish a claim against the attorney while asserting the attorney-client privilege to prevent the attorney from rebutting that claim"); *Vandenhaute v. Filer*, 8th Dist. No. 80405, 2002-Ohio-3640, 2002 WL 1587846, ¶ 9 ("Like all privileges, the physician-patient privilege is intended to be used

as a shield of privacy, not a sword to escape liability or to otherwise gain an advantage").

{¶ 19} We find that the record demonstrates that Mota's actions satisfy the elements of criminal trespass as contemplated under R.C. 955.28(B). It is undisputed that Mota entered Jerome M. and Marion's premises without their consent. And contrary to Mota's assertion, R.C. 2713.22 does not provide a "privilege" to negate the trespasser defense under R.C. 955.28(B). Accordingly, we find that the trial court properly determined that Jerome M. and Marion could not be held strictly liable under R.C. 955.28(B).

## Common-Law Negligence

{¶ 20} Mota also argues that the trial court erred in granting summary judgment on his common-law-negligence claim on the basis that it erroneously classified him as a licensee for purpose of its negligence analysis. He contends that his position as a bounty hunter required that he be afforded the same protections owed an invitee. We disagree.

{¶ 21} The legal duty that landowners owe a person who enters their land depends upon the status of the entrant, i.e., trespasser, licensee, or invitee. *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996). "Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." *Id.* In contrast, a licensee is a person who enters another's property "by permission or

acquiescence, for his *own* pleasure or benefit, and not by invitation." (Emphasis added.) *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986).

{¶ 22} We find no basis to conclude that Mota was an invitee on the property. The Ohio Supreme Court has consistently held that even police officers and firefighters entering upon privately owned premises in the performance of their duties without an express or implied invitation are licensees. *See, e.g.*, *Scheurer v. Trustees of Open Bible Church*, 175 Ohio St. 163, 192 N.E.2d 38 (1963), paragraph one of the syllabus; *Hack v. Gillespie*, 74 Ohio St.3d 362, 658 N.E.2d 1046 (1996). There is absolutely no support for the proposition that Mota, acting pursuant to an arrest warrant, falls within the status of an invitee. Indeed, it is undisputed that the Gruszczynskis did not invite Mota onto their property.

{¶ 23} Thus, even assuming that Mota was a licensee, the Gruszczynskis owed Mota the same duty owed to a trespasser: "to refrain from willful, wanton or reckless conduct [that] is likely to injure him." *Gladon*, 75 Ohio St.3d at 317, 662 N.E.2d 287, citing *Soles v. Ohio Edison Co.*, 144 Ohio St. 373, 59 N.E.2d 138 (1945), paragraph one of the syllabus. And based on the status of a licensee, we find that the trial court properly determined as a matter of law that the "Gruszczynskis' act of permitting the dog to remain in the enclosed, screened-in porch after giving birth to her puppies is not the kind of willful, wanton, or reckless conduct that is likely to injure a third person." Accordingly, we find no error in the trial court's granting of summary judgment on this claim.

## Loss-of-Consortium Claim

**{¶ 24}** Lastly, Bryn Mota argues that the trial court erroneously granted summary judgment on her loss-of-consortium claim after finding that it was derivative to Mota's negligence and strict-liability claims and that those two claims had no merit. Having already determined that the trial court properly granted summary judgment on those claims, we likewise find that Bryn Mota's loss-of-consortium claim fails as a matter of law. *See Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 585 N.E.2d 384 (1992) (if the underlying tort claim fails on the merits, so does the loss-of-consortium claim).

**{¶ 25}** The sole assignment of error is overruled.

Judgment affirmed.

COONEY, J., and ROCCO, J., concur.