[Cite as *Hawkins v. K&D Mgt., L.L.C.*, 2023-Ohio-4421.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

WILBUR HAWKINS, ET AL.,       :

      Plaintiffs-Appellants,    :

                                      No. 112648

      v.                        :

K&D MANAGEMENT, LLC,       :

      Defendant-Appellee.     :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 7, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-948186

---

### *Appearances:*

Law Office of J. Michael Goldberg LLC, and J. Michael Goldberg; The Law Offices of Michael L. Eisner, LLC, and Michael L. Eisner, *for appellants.*

Marshall Dennehey Warner Coleman & Goggin, and David J. Fagnilli, *for appellee.*

MARY J. BOYLE, J.:

{¶ 1} Plaintiffs-appellants, Wilber Hawkins ("Hawkins") and Debra Massa ("Massa") (collectively referred to as "plaintiffs"), appeal the trial court's judgment denying their partial motion for summary judgment and granting summary

judgment in favor of defendant-appellant, K&D Management, LLC ("K&D"). Plaintiffs raise the following two assignments of error for review:

> **Assignment of Error I:** The trial court erred in denying [plaintiffs'] motion for partial summary judgment.

> **Assignment of Error II:** The trial court erred in granting [K&D]'s motion for summary judgment.

{¶ 2} For the reasons set forth below, we affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} This appeal arises from injuries plaintiffs (tenants) sustained while using an elevator in their apartment building on July 30, 2016, which is owned and operated by K&D (landlord). Plaintiffs filed a complaint against K&D in June 2018 alleging that the elevator in Harbor Crest, their apartment building, quickly descended and came to an abrupt stop. In response, K&D filed an answer and a third-party complaint against ThyssenKrupp Elevator Corporation ("TKE"), the company who maintained and serviced the elevator. The matter proceeded with discovery, and both K&D and TKE filed respective motions for summary judgment. Before either motion was ruled upon, plaintiffs voluntarily dismissed their complaint in May 2020.

{¶ 4} One year later, in May 2021, plaintiffs refiled their complaint, which is the matter before us, naming K&D as the sole defendant. K&D did not file a third-party complaint against TKE in the refiled case. In their complaint, plaintiffs, who are husband and wife, alleged that at approximately 9:00 a.m., they pressed the elevator call button on the 14th floor of their apartment building to summon the

elevator.  They entered into Elevator No. 1 and Hawkins pressed the "B" button, which would take them to the basement where their car was parked.  The elevator started to descend but then stopped.  Hawkins pressed the button again, and the elevator resumed its descent before stopping again.  They were unable to exit the elevator because the button for opening the door was not functional.

{¶ 5}  Hawkins continued to press the basement button, and every time, the elevator would move a little and then stop.  When he held his hand on the button, he noticed that it remained lit, and the elevator descended very slowly.  When the elevator reached the 10th floor, it accelerated quickly and rapidly fell several floors before coming to a sudden, jarring halt.  Moments later, it jolted up and then stopped between floors.  When they realized that the elevator was descending uncontrollably, Massa grabbed onto the bar along the back of the elevator and braced herself against Hawkins.  Hawkins also used his cane to try to brace himself for the impact.  Massa was unable to withstand the force from the change in acceleration to the abrupt stop and fell, striking her knees on the floor and fracturing her right elbow on the metal bar she was holding onto for support.  Hawkins used his cane to press the emergency fire department call button and they remained trapped in Elevator No. 1 for several minutes until the fire department arrived, shut down the elevator, pried open the door, and rescued them.  Afterwards, plaintiffs went to the hospital to address their injuries.  The elevator was taken out of service after the incident.

{¶ 6} In their complaint, plaintiffs alleged that, as their landlord, K&D owed them the duty under R.C. 5321.04(A) to keep the premises in a safe condition and maintain all elevators in good and safe working condition. Plaintiffs' complaint asserted three causes of actions against K&D. In Count 1, the plaintiffs alleged K&D was negligent for failing to maintain, operate, and repair Elevator No. 1 as required by law, rendering Elevator No. 1 unfit and unsafe for use by passengers. Plaintiffs further claimed that K&D was negligent because it knew or reasonably should have known that Elevator No. 1 was unsafe and likely to malfunction, as it had several times in the past. In Count 2, plaintiffs alleged loss of consortium as a result of K&D's negligence. In Count 3, plaintiffs sought a punitive-damage claim, alleging that K&D's conduct demonstrated malice and a conscious disregard for the rights and safety of all passengers of Elevator No. 1.

{¶ 7} Following discovery, plaintiffs and K&D each filed respective motions for summary judgment. Plaintiffs moved for a partial summary judgment on liability only and K&D moved for summary judgment on all claims. K&D argued that it was not negligent and there was no evidence that it had prior notice of any similar issues relating to Elevator No. 1. In support of its motion, K&D attached the affidavit of their expert, John Donnelly ("Donnelly"), an electrical engineer and licensed elevator inspector. Donnelly averred that he inspected the TKE maintenance records and determined that K&D could not have anticipated or prevented the failure that occurred and that the subject elevator was top-of-the-line equipment, installed just four years prior to the incident. K&D further argued that

Elevator No. 1 could not have come to a crashing halt because, accordingly to Donnelly, it was physically impossible for the elevator to have fallen at a high speed due to several built-in safety mechanisms, the elevator's maximum speed, and the counterweight that prevents it from falling. K&D also relied on plaintiffs own depositions in which they stated that during the five years they lived in Harbor Crest, neither Hawkins nor Massa had been in a malfunctioning elevator. Both plaintiffs testified that they had seen an elevator out of service from time to time, but they had no knowledge as to the cause.

{¶ 8} Plaintiffs asserted three arguments in their motion for summary judgment. First, plaintiffs argued that K&D is a common carrier as a matter of law and owed an affirmative duty to protect plaintiffs as elevator passengers. Next, plaintiffs claimed that K&D's violation of R.C. 5321.04(A) constituted negligence per se. Lastly, plaintiffs claimed that K&D was liable for any harm caused to them by TKE's negligence during its maintenance of Elevator No. 1.

{¶ 9} In support of their motion, plaintiffs attached the affidavit of K&D maintenance technician Willie Moore ("Moore"). Moore averred that he has personally experienced the sudden drop and stop of the elevator. According to Moore, elevators malfunctioned and entrapped passengers so often that K&D's management instructed its maintenance staff to stop calling the fire department whenever an event took place.

{¶ 10} Plaintiffs also attached the affidavit of Michael Costa ("Costa"), their elevator expert, who averred that the elevators in Harbor Crest had a long history of

malfunctioning, with at least 17 entrapments in the elevators. Costa concluded "to a reasonable degree of elevator mechanics, engineering and maintenance certainty that K&D's failure to maintain the elevators and failure to properly identify and repair defects of which it knew or reasonably should have known with the exercise of ordinary care directly and proximately resulted in the sudden abrupt stop that [plaintiffs] experienced on July 30, 2016." (Costa affidavit, ¶ 11). Costa further concluded that "K&D breached its duties which directly and proximately caused the incident." (Costa affidavit, ¶ 11). Costa explained that:

> The incident is most likely a result of the elevator "getting lost" in the hoistway due to a malfunctioning selector and/or selector relays. When the elevator "gets lost" it will go to a terminal floor (in this case the basement) to reset itself. While attempting to level into the floor, the motor limit timer (MLT) faulted out resulting in an entrapment between floors. Elevator selectors require thorough and systematic maintenance procedures be performed as recommended by the original equipment manufacturer. When selector maintenance is properly performed and relays/switches are adjusted adequately, the elevator "knows" the position of the car in the hoistway and functions correctly. The failure of the relay in the selector is most likely the cause of the abrupt stop.

(Costa affidavit, ¶ 4).

{¶ 11} In March 2023, the trial court denied plaintiffs' motion for partial summary judgment and granted K&D's motion, dismissing all of plaintiffs' claims. In its judgment entry, the trial court detailed its reasoning, explaining that when

> construing the evidence in a light most favorable to the non-moving parties, the court finds that there is no genuine issue as to any material fact and that reasonable minds could only reach the conclusion that plaintiff has failed to present direct evidence that an unsafe or dangerous condition existed with the elevator which plaintiffs allege caused them to fall and resulted in their injury. Nor have plaintiffs

produced any evidence that defendant K&D knew of or should have known of the particular unsafe or dangerous condition that they allege occurred and caused their injury with the said elevator. In light of this, the court determines that plaintiffs have failed to establish that K&D breached a duty owed to them and therefore, [K&D] is entitled to judgment as a matter of law on plaintiffs' negligence, loss of consortium and punitive damages claims.

(Judgment entry, 03/24/23.)

{¶ 12} It is from this judgment that plaintiffs now appeal.

## II. Law and Analysis

### A. Summary Judgment Standard of Review

{¶ 13} An appellate court reviews the grant or denial of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). In a de novo review, this court affords no deference to the trial court's decision and independently reviews the record to determine whether the denial of summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.).

{¶ 14} Summary judgment is appropriate if (1) no genuine issue of any material fact remains; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Id.*, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 631 N.E.2d 150 (1994).

{¶ 15} The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party must then point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293.

### B. Negligence, Notice, and R.C.5321.04

{¶ 16} Plaintiffs argument is essentially three-fold: (1) K&D, as the owner and manager of a building that provides passenger elevators for tenants' use, is a common carrier as a matter of law who owes its elevator passengers an affirmative duty of protection and is required to exercise the highest degree of care reasonably required by the situation; (2) K&D's violations of R.C. 5321.04(A)(4) constitute negligence per se as a matter of law; and (3) K&D's duties under R.C. 5321.04 are nondelegable; therefore, K&D is liable for TKE's negligence as a matter of law.[1]

{¶ 17} As a preliminary matter, we note that K&D does not dispute plaintiffs' argument that it is a common carrier and, therefore, owes plaintiffs the duties set forth in R.C. 5321.04(A) and its duties are nondelegable. K&D, however, contends that prior notice is a prerequisite to establish negligence per se under R.C. 5321.04.

---

[1] Relevant to the instant case, R.C. 5321.04(A)(4) provides that "[a] landlord who is a party to a rental agreement shall * * * [m]aintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by the landlord[.]"

Therefore, our discussion will focus on the issue germane to this appeal — are plaintiffs required to prove prior notice to establish K&D's negligence per se under R.C. 5321.04(A)(4)?  For the reasons that follow, we answer in the affirmative.

{¶ 18} Plaintiffs argue that the requirement of prior notice in a residential landlord-tenant action involving common carrier liability will lead to an inconsistent and absurd result when a claim under R.C. 5321.04(A) is grounded on the recognized special relationship between a common carrier and its passenger. Plaintiffs explain that if the highest degree of care requires a common carrier to affirmatively protect passengers from dangers, then such dangers cannot exist but for the common carrier's own negligence.  In other words, the only way a common carrier can have notice of a dangerous condition is if a dangerous condition exists, and the only way a dangerous condition can exist to provide that notice is if the common carrier fails to affirmatively protect its passengers in the first place.  Thus, plaintiffs contend that requirement of prior notice will establish a standard which, by its very nature, cannot be affirmative protection.

{¶ 19} K&D argues that plaintiffs provide no caselaw in support of their position.  Rather, K&D asserts that the caselaw supports its argument that a landlord is not liable per se under R.C. 5321.04 if the landlord does not have prior notice of a dangerous condition.  K&D maintains that plaintiffs have not established notice in the matter before us and, therefore, summary judgment is proper.  We find K&D's argument more persuasive.

{¶ 20} In *Sikora v. Wenzel*, 88 Ohio St.3d 493, 498, 727 N.E.2d 1277 (2000), the Ohio Supreme Court clarified its prior decision in *Shroades v. Rental Homes, Inc.*, 68 Ohio St.2d 20, 427 N.E.2d 774 (1981), to the extent that *Shroades* was ambiguous as to the source and nature of the notice requirement applicable to a violation of a statute imposing negligence per se.[2] The *Sikora* Court found that a landlord will be excused from liability if it neither knew nor should have known of the condition. *Id.* The *Sikora* Court held: "A landlord's violation of the duties imposed by R.C. 5321.04(A)(1) or 5321.04(A)(2) constitutes negligence per se, but a landlord will be excused from liability under either section if he neither knew nor should have known of the factual circumstances that caused the violation. ([*Shroades*], clarified.)" *Id.* at the syllabus.

{¶ 21} Moreover, this court has previously addressed the issue raised by plaintiffs and agreed that "[v]iolations of R.C. 5321.04(A)(4) are considered negligence per se." *Sabolik v. HGG Chestnut Lake L.P.*, 180 Ohio App.3d 576, 2009-Ohio-130, 906 N.E.2d 488, ¶ 13 (8th Dist.), citing *McKenzie v. FSF Beacon Hill Assocs., LLC*, 10th Dist. Franklin No. 05AP1194, 2006-Ohio-6894, ¶ 11; *Trammell v. McDonald*, 3d Dist. Defiance No. 4-04-15, 2004-Ohio-4805, ¶ 12. We noted, however, that:

> It is important to recognize that negligence per se is not strict liability, but the legislative establishment of a standard of care, the violation of which constitutes negligence. *Chambers v. St. Mary's School*, 82 Ohio

---

[2] In *Shroades*, the court held that "[a] landlord is liable for injuries, sustained on the demised residential premises, which are proximately caused by the landlord's failure to fulfill the duties imposed by R.C. 5321.04. (*Thrash v. Hill*, 63 Ohio St.2d 178, overruled.)" *Id.* at syllabus.

St.3d 563, 565, 1998 Ohio 184, 697 N.E.2d 198. ***The plaintiff continues to bear the burden of proving a breach of the statutory standard of care.*** *Morgan v. Mamone*, Cuyahoga App. No. 87612, 2006-Ohio-6944, ¶ 19, citing *Shroades* [*v. Rental Homes, Inc.*, 68 Ohio St.2d 20, 427 N.E.2d 774]. ***"[A] landlord will be excused from liability [for a statutory violation] if he neither knew nor should have known of the factual circumstances that caused the violation."*** *Sikora v. Wenzel*, 88 Ohio St.3d 493, 2000-Ohio-406, 727 N.E.2d 1277, syllabus. Moreover, ***"negligence per se*** does not dispense with a plaintiff's obligation to prove that the breach of the duty was the proximate cause of the injury complained of, nor ***does it obviate a plaintiff's obligation to prove that the landlord received actual or constructive notice of the condition causing the statutory violation.***" *Allstate Ins. Co. v. Henry*, Butler App. No. CA2006-07-168, 2007-Ohio-2556, ¶ 11.

(Emphasis added.) *Sabolik* at ¶ 13; *see also Mixon v. K&D Apt. Community Owners & Mgrs.*, 8th Dist. Cuyahoga No. 104338, 2017-Ohio-98, ¶ 13 (upholding summary judgment in favor of K&D where K&D offered substantial evidence to show that the elevator was in proper working order before the incident and it had no knowledge that the elevator had any mechanical defect prior to the incident, and the plaintiffs offered nothing to rebut K&D's evidence.).

{¶ 22} Thus, based on the foregoing, for plaintiffs to survive summary judgment, they must demonstrate that K&D had prior notice of the malfunctioning hazard in Elevator No. 1 in order to establish negligence per se under R.C. 5321.04(A)(4). Notwithstanding their argument that prior notice is not required, plaintiffs also argue that they do, in fact, have proof of prior notice by K&D. Plaintiffs, relying on Moore's affidavit, argue that K&D had actual notice of Elevator No. 1's prior malfunctioning. Moore averred that

This was not the first time this elevator malfunctioned. I myself have had the elevator drop while I was in it. It is not a good feeling. We always had problems [with] the elevators. It was an ongoing thing, and we got a lot of complaints about them from tenants.

It got expensive for K&D to call the fire department because it happened so often. At one point I had been told by my supervisor to use the elevator key to let people out instead of calling the fire department. We were shown how to open the elevator door, but I could never get it open, so I never used the key. We were also shown where the elevator controls were on top of the building.

(Moore affidavit, ¶ 6-7.)

{¶ 23} Our court has addressed this notice issue in *Moore v. Behringer Harvard 600 Superior LP*, 8th Dist. Cuyahoga No. 96926, 2011-Ohio-6652. In *Moore*, the plaintiff fell as she entered an elevator in a parking garage owned and operated by defendant-Behringer Harvard due to the elevator floor being unlevel with the entrance floor. Behringer Harvard moved for summary judgment arguing that it did not have notice of the elevator misleveling. Behringer Harvard's expert in elevator maintenance and service reviewed the maintenance records for the subject elevator and determined that regular maintenance examinations were performed and defendant had no notice of problems with misleveling.

{¶ 24} The plaintiff argued that Behringer, a common carrier, had general knowledge of "multiple mechanical problems with these elevators despite regular maintenance and service is sufficient to put [Behringer Harvard] on notice that the elevators present a danger to its passengers and some sort of warning was required." *Id.* at ¶ 7. The plaintiff included the affidavit of an employee, the general manager of the Fifth Third Center for Behringer Harvard, which stated that the elevators had

experienced some mechanical problems in the past. The plaintiff also relied on her husband's testimony that there were times when one or both of the elevators would be down. The trial court granted Behringer Harvard's motion for summary judgment finding that the plaintiff "'failed to provide any direct evidence that the garage elevators, under the control of defendant Behringer Harvard, presented a dangerous condition ("elevator leveling") that defendant knew existed or should have known existed.'" *Id*. at ¶ 8.

{¶ 25} On appeal, this court affirmed the trial court's judgment finding that knowledge of any known malfunction, such as a light out, the door not closing properly, or stopping at the wrong floor, was not sufficient to create a genuine issue of material fact as to whether Behringer Harvard had notice of the leveling issue such that would preclude summary judgment. *Id*. at ¶ 18. We reasoned:

> [T]he mere fact that these malfunctions occurred in the past is insufficient to establish that Behringer Harvard should have known of a possible misleveling problem with Elevator No. G2. Indeed, the plaintiff failed to present any evidence to support this claim. Instead, the plaintiff's argument essentially seeks to impose strict liability on Behringer Harvard because she was injured while using the elevator. This proposition, however, is not supported under the law.

*Id*. at ¶ 18.

{¶ 26} In *Moore*, we found our analysis in *Hodges v. Gates Mills Towers Apt. Co.*, 8th Dist. Cuyahoga No. 77278, 2000 Ohio App. LEXIS 4477 (Sep. 28, 2000), to be analogous. In *Hodges*, the plaintiff alleged that the elevator misleveled, causing her to fall and sustain injuries. She filed suit against the owner and operator of the elevator, who moved for summary judgment on the grounds that it had no

actual or constructive notice of any misleveling problems associated with the elevator. The trial court granted defendant's motion for summary judgment and this court affirmed, noting that plaintiff failed to rebut defendant's evidence and demonstrate that defendant "had actual or constructive notice of the mis-leveling problem." *Id.* at 10.

{¶ 27} Likewise, plaintiffs' reliance here on Moore's statements is lacking in several ways. First, Moore does not include any time frame as to when he experienced "the elevator drop." Moore signed his affidavit on November 7, 2022, which is more than seven years after the incident. The timing is critical since any experience after the July 30, 2016 incident would not constitute prior notice. Second, while Moore's affidavit generalizes about "the elevators" having "problems," he does not identify the extent of the problems that existed prior to the incident. Lastly, Moore's affidavit does not prove that K&D received prior notice of the malfunction causing a statutory violation under R.C. 5321.04.

{¶ 28} At best, Moore's affidavit provides evidence that at least one of the six elevators in the apartment complex experienced issues at some time in the past. For plaintiffs to survive summary judgment, however, it is not enough to establish that K&D had notice of different issues with some of the apartment complex's six elevators in general. Rather, it is essential that plaintiffs prove the notice was specific to the particular unsafe or dangerous condition which allegedly caused the injury and, in the matter before us, that means the rapid fall and sudden stop of Elevator No. 1.

{¶ 29} Plaintiffs also rely on evidence offered through Costa's expert report that K&D had notice of different issues with the elevator "acting up," but this evidence, even when viewed in a light most favorable to plaintiffs, is insufficient to create a genuine issue of material fact as to whether K&D had notice of an accelerated drop and sudden stop by Elevator No. 1, as plaintiffs alleged to be the cause of their injuries. Costa does not identify in his report, his affidavit, nor his deposition testimony any notice of accelerated dropping or sudden stop issues with any of the elevators prior to the incident alleged by plaintiffs.

{¶ 30} In support of its motion for summary judgment, K&D submitted evidence demonstrating that Elevator No. 1 was upgraded and modernized by Edmonds Elevator in 2012. After the incident, K&D called for maintenance. That same day, TKE inspected Elevator No. 1 and found that the motor timer limit occurred, but could not duplicate the problem. Costa acknowledges this faulty motor limit timer in his affidavit. Costa stated, this incident is most likely a result of the motor limit timer "fault[ing] out resulting in an entrapment between floors." (Costa affidavit ¶ 4.)

{¶ 31} The motor limit timer is factory-set to turn the motor off after three minutes in order to prevent the motor from overworking. According to Donnelly, K&D's expert:

> the motor limit timer control circuit monitors the running time of the motor. If the elevator motor does not turn off in a pre-determined amount of time, the elevator motor is stopped. This timer is factory set for 180 seconds. The motor limit timer circuit is not required by the

Elevator Code. It is an additional option to protect the integrity of the motor. It is not required for safe operation of the elevator.

This problem was occurring intermittently and TKE eventually found a few days later that replacing the DZ (door zone) relay fixed the problem based on the records that I reviewed. This repair was performed on August 5, 2016. There was one similar reported problem on July 29, 2016 and TKE found the motor limit time tripped after the building called for service. TKE could not duplicate the problem and tested the elevator before returning it to service.

* * *

If the * * * motor limit timer parameter is reached, then the elevator will come to a controlled electrical stop, similar to using a stop switch.

* * *

The building has a full maintenance contract with TKE which provided services to regularly and systematically examine, clean, lubricate, adjust, repair, replace and test the elevator components. Records show that TKE provided services per their contract and the custom and practice in the industry.

(Donnelly letter, Nov. 28, 2022.)

{¶ 32} Donnelly opined that "[d]ue to the inherent design of the subject elevator, it would not have been physically possible for the elevator to fall to the ground at high speed as the plaintiffs testified in their depositions." (Donnelly affidavit, ¶ 3.) Donnelly explained that the elevator is designed with a pulley system where it is attached to a counterweight that is 800 pounds heavier than the elevator when it is empty. Therefore, Donnelly concluded that "with only two people in the elevator, the principles of gravity establish that, even if the elevator motor and all safety brakes failed, the elevator would go up, not fall down." (Donnelly affidavit, ¶ 3.) Donnelly also concluded that if the elevator malfunctioned or exceeded the

rated speed of 350 feet per minute (4 m.p.h.) for any reason, it would "trip one of the multiple built in safety mechanisms to stop the elevator." (Donnelly affidavit, ¶ 3.) Donnelly explained that, in this instance, "[n]either the drive or the governor was tripped during this event, so we know the elevator did not exceed a speed of 385 feet per minute." (Donnelly affidavit, ¶ 3.) Donnelly further opined that "[e]levators are complex electro-mechanical systems that can fail even with proper maintenance" and "[t]here was nothing [K&D] could or should have done to prevent this incident." (Donnelly letter, Nov. 28, 2022.)

{¶ 33} Based on the foregoing, K&D submitted substantial evidence to demonstrate that the elevator was in proper working order before the incident and that it had no knowledge that the elevator had any mechanical defect prior to the incident. Plaintiffs offered nothing to rebut this evidence. As a result, we conclude that reasonable minds could find no genuine issue of material fact on the issue of K&D's liability and that the court did not err by granting K&D's motion for summary judgment. *See Mixon*, 8th Dist. Cuyahoga No. 104338, 2017-Ohio-98, at ¶ 13.

{¶ 34} Having found that summary judgment is proper on the plaintiffs' negligence claim, we likewise find that their loss of consortium and punitive damages claims fail as a matter of law. *Mota v. Gruszczynski*, 197 Ohio App.3d 750, 2012-Ohio-275, 968 N.E.2d 631, ¶ 24 (8th Dist.), citing *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 585 N.E.2d 384 (1992) (if the underlying tort claim fails on the merits, so does the loss of consortium claim); *Armatas v. Aultman Health Found.*, 5th Dist. Stark No. 2016CA00130, 2016-Ohio-7316, ¶ 23, citing *Vickers v. Wren*

*Industries, Inc.*, 2nd Dist. Montgomery No. 20914, 2005-Ohio-3656, ¶63-65 ("A punitive damages claim is a derivative action that must be dismissed where the primary claim is subject to summary judgment.").

{¶ 35} Accordingly, the first and second assignments of error are overruled.

## III. Conclusion

{¶ 36} Plaintiffs seek to impose strict liability on K&D, as a common carrier under R.C. 5321.04, because of the injuries they sustained while passengers in their apartment complex's elevator. This proposition, however, is not supported by the law. Rather, to survive summary judgment, plaintiffs must prove that K&D had prior notice of Elevator No. 1's mechanical issues at the time of the incident to establish K&D's negligence per se under R.C. 5321.04. Plaintiffs offered no such evidence. Therefore, plaintiffs failed to create a genuine issue of material fact and reasonable minds can come to but one conclusion — summary judgment in K&D's favor is proper.

{¶ 37} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
SEAN C. GALLAGHER, J., CONCUR